GATES HOTEL COMPANY, Appellant, v. C. R. H. DAVIS REAL ESTATE COMPANY.

GATES HOTEL COMPANY v. C. R. H. DAVIS REAL ESTATE COMPANY, Appellant.—52 S. W. (2d) 1011.

Division One, September 3, 1932.

*Salkey & Jones* for Gates Hotel Company; *Benjamin C. Klene* of counsel.

*Claud D. Hall* and *C. P. Berry* for C. R. H. Davis Real Estate Company.

FRANK, J.—This is an action in equity the purpose of which is to establish a trust in favor of plaintiff, Gates Hotel Company, in certain real and personal property located in the city of St. Louis. The decree below was in favor of plaintiff and both parties appealed.

Both plaintiff and defendant are Missouri corporations. Royal Investment Company, another Missouri corporation also figures in the transaction. It appears from the petition that plaintiff, Gates Hotel Company, was the owner of six eleven-room residence buildings located in the city of St. Louis; that each of said residence buildings was encumbered by a first deed of trust in the sum of $5,000 each, and by a blanket second deed of trust covering all of said buildings in the principal sum of $12,900; that said deeds of trust as well as the notes secured by them were held by the Royal Investment Company; that plaintiff, Gates Hotel Company, being desirous of remodeling or improving said six residence properties, on February 27, 1913, borrowed $4,240.45 from the Royal Investment Company for that purpose, and to secure the payment of said $4,240.45 executed to the Royal Investment Company its note for that amount, due two days after date, and secured the payment thereof by a chattel mortgage on the furniture and fixtures then located in the D'Arle Hotel, which furniture and fixtures were then owned by plaintiff and used by it in the operation of said hotel; that on the same date, February 27, 1913, to further secure the payment of the blanket second deed of

trust on said six residence properties, plaintiff executed to the Royal Investment Company an assignment of the rents of said properties, with authority to collect such rents, keep the properties in repair, pay the taxes thereon, and apply the net balance from rents collected on the indebtedness on said properties; that said assignment of rents and power of attorney was irrevocable until the payment and release of the second deed of trust on said properties; that on March 20, 1913, the chattel mortgage theretofore executed by plaintiff to the Royal Investment Company conveying the furniture and fixtures in the D'Arle Hotel to secure the payment of a note for $4,240.45 was foreclosed and the Royal Investment Company purchased said furniture and fixtures at such foreclosure sale; that thereafter on April 14, 1913, the blanket second deed of trust on the six dwelling houses was foreclosed and the Royal Investment Company became the purchaser of said properties at said foreclosure sale and received a trustee's deed therefor; that thereafter on May 1, 1920, the Royal Investment Company sold and conveyed one of the said six residence properties to C. F. Foye for a recited consideration of $7,500, for which plaintiff has not received credit. On July 20, 1920, the Royal Investment Company conveyed the five remaining residence properties to defendant for a recited consideration of $100 subject to first deed of trust in the principal sum of $5,000 on each house. The petition further alleges that at and prior to the foreclosure of the second deed of trust on said six residence properties in the year 1913, the holder of said deed of trust, the Royal Investment Company, agreed to purchase said properties at such foreclosure sale as trustee for plaintiff and to hold same in that capacity. The allegations of the petition respecting this alleged agreement are as follows:

"Plaintiff says that said sale of said real estate was also made as a part of a plan to defraud plaintiff of its property. That at the time of and prior to said sale under said deed of trust, in consideration of plaintiff executing and delivering said chattel mortgage, and in further consideration of plaintiff executing and delivering the said power of attorney and assignment of rents, it was expressly understood and agreed that although a sale of said properties was to be made, the relation of mortgagor and mortgagee, as between plaintiff and said Royal Investment Company, should continue the same as before the sale, and in purchasing the said property at said sale the said Royal Investment Company was purchasing the same as trustee for plaintiff, and that it would continue to hold the same as trustee for plaintiff, and would account to it for all rents, and income therefrom, and return to plaintiff the title to said property when the income thereof would have paid the balance of the principal and interest then due on said second deed of trust; . . ."

The petition also alleges the making of a like agreement concerning the foreclosure of the chattel mortgage on the furnishings and fixtures located in the D'Arle Hotel. The answer of defendant, (1) denies generally the allegations of the petition, and (2) pleads certain facts as a defense to plaintiff's alleged cause of action.

Plaintiff's petition contains two counts. The first count seeks to establish a trust relation as to said personal property, and prays the court to require defendant to file a complete accounting of its handling of said personal property, and order defendant to pay to plaintiff the sum of $10,000 and interest as the value of said personal property. The finding and judgment on this count was against plaintiff, of which no complaint is made on this appeal, so we need not give this count further notice. The second count of the petition seeks to establish a trust relation as to the six residence properties. The prayer of the second count is as follows:

"Wherefore, plaintiff says that it is without relief except in a court of equity, and therefore prays that the court may try, the issue as to the continued existence of the said relation of mortgagor and mortgagee, between plaintiff and the said Royal Investment Company, and defendant as herein alleged; that it adjudge, order and decree that the relationship continues to the present time; that it order and direct the defendant to state and file in this court a full, complete and correct account of the receipts and disbursements made in connection with said property under said relationship; that the court ascertain and determine the amount due plaintiff, and give it judgment therefor, that the court enjoin and restrain the defendant from transferring, or in any wise doing any act or acts affecting the title to said property; that the court order and direct defendant to convey said property to plaintiff in accordance with the terms of the continuing relationship of mortgagor and mortgagee, as herein alleged.

"Plaintiff now tenders and offers to pay any amount that may be found, if any, owing to defendant and prays for such other and further relief as to the court shall seem meet in the premises."

The chancellor found the facts as alleged in the second count of the petition, and further found that plaintiff was entitled to have the five residences to which defendant held the title reconveyed to it, together with an accounting of all of the rents and income received therefrom, as well as an accounting of the proceeds of the one residence property which defendant had sold and conveyed to one C. F. Foye without plaintiff's consent. After making these findings it was adjudged and decreed that the cause be referred to Forest Ferris, Esq., as referee, to take and state a mutual account of all dealings and transactions in relation to and on the basis of

the findings of the court, between plaintiff and defendant. The referee heard the cause, stated an account between the parties and filed his report with the court. Numerous exceptions were made to the report of the referee, some of which were sustained and others overruled. The final decree of the chancellor was that plaintiff recover from defendant the five residence properties to which the defendant held title and in addition thereto the sum of $10,710.14.

Defendant makes the contention that since the plaintiff's petition is based upon an express contract, it was necessary to prove the alleged contract to have been in writing, as required by the Statute of Frauds, Sections 2169 and 2263, Revised Statutes 1919, now Sections 2967 and 3104, Revised Statutes 1929.

■ ■ There is no question but what plaintiff's case is bottomed on an alleged agreement between plaintiff and defendant. The petition alleges that the Royal Investment Company expressly agreed to bid in the six residence properties at the foreclosure sale as trustee for plaintiff, and continue to hold such properties in that capacity, and account to plaintiff for all rents and income therefrom, and return to plaintiff the title to said properties when such income and rents had paid the balance due on the second deed of trust. Where it is sought to establish a trust in real estate by agreement of the parties, such agreement must be in writing, else the alleged trust is void. The statute so provides and the decisions so hold. [Sec. 3104, R. S. 1929; Price v. Kane, 112 Mo. 412, 20 S. W. 609; Crawley v. Crafton, 193 Mo. 421, 431, 91 S. W. 1027; Heil v. Heil, 184 Mo. 665, 84 S. W. 45; Thomson v. Thomson, 211 S. W. 52, 56; Bender v. Bender, 281 Mo. 473, 220 S. W. 929; Ebert v. Myers, 320 Mo. 804, 9 S. W. (2d) 1066, 1067.]

The alleged agreement in this case was not in writing. This being true, the agreement, if made, was void. It is made so by statute. Section 3104, Revised Statutes 1929, provides as follows:

"All declarations or creations of trust or confidence of any lands, tenements or hereditaments shall be manifested and proved by some writing signed by the party who is, or shall be, by law, enabled to declare such trusts, or by his last will, in writing, or else they shall be void."

■ To authorize a recovery in cases of this character, the plaintiff must show something more than the mere violation of a parol agreement. The breach of a void contract does not give a right of action. In the case of Ferguson v. Robinson, 258 Mo. 113, 167 S. W. 447, this court discussed and determined the validity of an oral agreement such as we have in this case, and the consequences attending a violation thereof.

"As we have already seen, these trusts do not rest in contract but in fraud, so that should we admit that the statement of the petition, that the defendant gave plaintiff to understand that he would bid in the property for him at the execution sales to be held in October, 1908, on the terms stated, was sufficient, if true, to charge an agreement to that effect, the plaintiff would have taken only the first feeble step in the case he is trying to make, and the provision we have quoted from the Statute of Uses as well as the similar provision of the Statute of Frauds (Id., sec. 2783), would absolutely bar his further progress. 'Equity does not pretend to enforce verbal agreements in the face of the Statute of Frauds, and the person holding the legal title to real estate will not be decreed to be a constructive trustee, unless there is something more in the transaction than the mere violation of a parol agreement. Accordingly, the mere refusal of a trustee to execute an express trust, or the denial of the existence of the trust by him, does not make a case for raising a constructive trust. . . .' "

Ferguson v. Robinson, supra, is cited with approval in the recent case of Long v. Conrad, 42 S. W. (2d) 357, 361.

■ While the statute to which we have called attention (Section 3104, supra) will not permit a recovery for the mere violation of a parol agreement such as we have in this case, yet a court of equity will not permit designing persons to use the statute as a shelter for fraud. Thus where a purchaser of lands at a public sale, verbally agrees to hold for the debtor, and afterwards refuses to comply with his agreement, if in addition to the violation of his agreement, it should be shown that he was guilty of fraudulent acts and conduct which resulted to his advantage and to the debtor's disadvantage, equity would grant relief regardless of whether the agreement was written or verbal. We call attention to what was said on this subject in the early case of Sloney v. McMurray, 27 Mo. 113, 118. We there said:

"There is another class of cases growing out of the conduct of debtors and purchasers at public sales. This is where the purchaser becomes such under such a state of facts as would make it a fraud to permit him to hold on to his bargain. As if a purchaser, by means of a promise to reconvey to his debtor, should induce a relaxation of the efforts on his part to prevent a sacrifice of his property and thereby obtain it at an under price, or, if the purchaser, taking advantage of that reluctance invariably manifested by those attending public sales to interfere with any arrangement a debtor makes to save his property, should create an impression that he was buying for the debtor, thereby preventing competition, or by any other improper means obtains the property of a debtor at a sacrifice, such

conduct would convert the purchaser into a trustee for the benefit of those who were defrauded by his conduct. Such cases go upon the ground of fraud, and courts will give relief without regard to the circumstance whether the agreement was a written or a verbal one, or whether it was supported by a consideration or not. Such are the cases of Rose v. Bates, 12 Mo. 30; Estill v. Miller & Estill, 3 Bibb, 177."

Another early case, Hammond's Admrx. v. Cadwallader, 29 Mo. 166, 170, dealt with this question, as follows:

"Where transactions have been tainted with bad faith, there is a resulting trust by operation of law; but the simple violation of a parol contract does not constitute such a breach of faith; for if such was the law, the statute of frauds would be virtually repealed. It is not sufficient to call the transaction a fraud or a trust; there must be some artifice or trick employed to make it so, and a confidence reposed by one party in another on the faith of which something has been lost on one side and gained on the other. [Robertson v. Robertson, 9 Watts, 36; Haines v. O'Connor, 10 Watts, 320; Fox v. Heffner, 1 Serg. & R. 376; Lloyd v. Spillet, 2 Atk. 148.]

"Here, it will be seen by reference to the bill of exceptions, no fiduciary relations existed between Hammond and Cadwallader. No evidence is offered to show that Hammond was a bidder at the sale of the land, or that he expected at any time to become a bidder; no evidence that Cadwallader made any representations at the sale, or authorized any by which the sale was affected, or by which Cadwallader was enabled to buy the land at an under-value; no proof that in fact the land did not sell for its full market price at the date of the sale. The case was a naked promise to buy the land in trust for the plaintiff, and such a trust not being in writing is clearly within the third section of our statute of frauds.

"It will be observed that the bill in this case does not contain any allegation of fraud, and nothing is better settled than that, where a trust of this kind is sought to be enforced, fraud must be distinctly alleged and clearly proved."

It is clear that a mere violation of the alleged oral promise of defendant to purchase the real estate at the foreclosure sale, and thereafter convey same to plaintiff when the income and rents therefrom had paid the amount due on the second deed of trust, would not raise a trust in favor of plaintiff. Such an agreement is within the statute and therefore void. [Sec. 3104, R. S. 1929.] We do not understand that plaintiff contends otherwise. ▮ Its contention is that the evidence was sufficient to establish the creation of a constructive trust *ex maleficio* which does not fall within the ban of the statute. Such a trust would arise, if at all, by the wrongful and

fraudulent conduct of defendant, and where it is sought to establish and enforce such a trust, fraud must be distinctly alleged and clearly proved, a thing which the plaintiff did not do in this case.

It is clear that neither the mere making of the verbal agreement nor the bare violation thereof would amount to fraud. Otherwise the Statute of Uses and Trusts and the Statute of Frauds would serve no purpose. This being true, it follows that fraud, which would have converted the defendant into a trustee, *ex maleficio*, must have been fraud, the influence of which operated at the sale. Well considered cases so hold. In Kellum et al. v. Smith, 33 Pa. 158, 164, the Supreme Court of that State said:

"Had there been fraud in that purchase, they might have been held trustees *ex maleficio*. But the fraud which will convert the purchaser at a sheriff's sale into a trustee, *ex maleficio*, of the debtor, must have been fraud at the time of the sale. Subsequent covin will not answer, any more than subsequent payment of the purchase-money will convert an absolute purchase into a naked trust. When the purchaser at a sheriff's sale promises to hold for the debtor, and afterwards refuses to comply with his engagement, the fraud, if any, is not at the sale, not in the promise, but in its subsequent breach. That is too late. It is abundantly settled, that equity will not decree such a purchaser to be a trustee, unless there is something more in the transaction than the mere violation of a parol agreement."

In the same case, that court further said:

"It may in all cases be assumed, that when a promise is made to buy or to hold for another, confidence is invited, and more or less reposed. So it is, in every parol contract for the purchase of lands; but the statute of frauds would be worse than waste paper, if a breach of the promise created a trust in the promisor, which the contract itself was insufficient to raise."

The petition in this case does not charge the defendant with the commission of any fraudulent act. It is alleged that on July 20, 1920, the Royal Investment Company conveyed five of the six residence properties to defendant for a recited consideration of $100 subject to a first deed of trust of $5,000 on each house. The acts which the petition characterize as fraudulent are alleged as follows:

". . . that said defendant, at the time of said conveyance was not a purchaser in good faith and without notice of the agreement of the continuing relation of mortgagor and mortgagee, existing between plaintiff and defendant, and said Royal Investment Company, which was caused to be dissolved as a corporation within less than a month after said transfer of the title to said property to defendant; that said conveyance was made without consideration paid by said de-

fendant, to said Royal Investment Company, and that said defendant took same with notice of the continuing relation of mortgagor and mortgagee existing between plaintiff and said Royal Investment Company, and that said transfer was made, and said Royal Investment Company was dissolved in pursuance of the plan, to defraud plaintiff of its said properties, and in order to remove the plaintiff one step further from that corporation, which held title to said properties and in whose name, and for whom its aforesaid officers were so acting in the plan to defraud plaintiff of its properties.''

■ The conveyance of the properties to defendant by the Royal Investment Company and the dissolution of said company which the petition characterizes as the pursuance of a plan to defraud plaintiff, occurred seven years after the foreclosure sale. These allegations do not amount to a charge of fraud. In the first place such acts, standing alone, are consistent with an honest purpose, and when considered with other acts alleged in the petition, do not amount to fraud. In the next place, the conveyance of the properties to defendant in 1920 and the dissolution of the corporation shortly thereafter, did not tend to prove that fraud occurred prior to or at the foreclosure sale which occurred seven years before. If there was no fraud in the foreclosure sale at which defendant acquired the properties, plaintiff has no just ground to complain about what happened thereafter. There is no allegation in the petition and no evidence was offered tending to show that plaintiff was induced not to bid on the property at the foreclosure sale, or to refrain from making arrangements to buy or protect the property at the sale. Neither is it alleged nor does the evidence show that any one representing defendant said or did anything prior to or at the sale to prevent competitive bidding or that defendant by any fraudulent or unfair means obtained the property at a sacrifice. The petition presents a case of a mere violation of a naked promise to buy the land at the foreclosure sale and hold same for plaintiff until the income from the property was sufficient to pay the second deed of trust, then convey same back to plaintiff. As there was no showing of fraud or performance of the parol contract, the statute which requires such a contract to be in writing, remains an insuperable barrier to its enforcement.

■ The petition alleges that the Royal Investment Company and defendant for a period of about seven years after the foreclosure sale continued to recognize plaintiff's equity in the property under aforesaid parol agreement, and repudiated said agreement for the first time in June, 1920.

This allegation does not aid the plaintiff for two reasons. In the first place it is a mere conclusion of the pleader. No facts are

stated from which a court could determine whether or not defendant recognized that plaintiff had an equity in the property, or that the alleged oral agreement was repudiated in June, 1920. In the next place the petition specifically alleges facts which show that defendant at no time after the foreclosure sale either performed the alleged oral agreement or recognized that plaintiff had an equity in the properties. That allegation reads as follows:

"Plaintiff further says that defendant has continued to the present time to *collect and retain* the rents and income from said McPherson Avenue properties, in the name of said Royal Investment Company, and in the name of said C. R. H. Davis Real Estate Company, and contrary to its duties in the premises, *has never accounted to plaintiff for the same,* or rendered any statement thereof to it."

Plaintiff points to evidence tending to show that L. F. Gates, representing Gates Hotel Company, was permitted to examine the books and accounts of defendant relative to these properties, and that he was promised a statement of the account which he never received, as tending to show that defendant still recognized that plaintiff had an equity in the property. If the books and accounts of defendant, or any other substantial evidence, tended to show that defendant purchased the property at the foreclosure sale as trustee for plaintiff and was collecting the income therefrom as such trustee, and applying the same on the debt which plaintiff owed on the property, the fact that plaintiff was permitted to examine defendant's books and was promised a statement of the account would be a corroborating circumstance which the chancellor might have considered, but standing alone, such fact might tend to show that the alleged oral promise was made, but it is no evidence of fraud, or of such performance of the oral promise as would take it out of the statute. Not only do defendant's books fail to show that defendant was collecting the rents as trustee for plaintiff, but plaintiff's petition alleges that defendant *collected and retained* the rents in its own name and refused to account to plaintiff therefor, or render a statement thereof to it. Plaintiff points to other facts and circumstances and contends that they show "there was an agreement whereby defendant was to apply the income on the debt and eventually reconvey the property to plaintiff, but to hold as trustee for plaintiff in the interim." Conceding for the sake of argument that the facts and circumstances to which plaintiff calls attention do tend to prove such an agreement, the agreement, if made was not in writing, and for the reasons heretofore stated, could not be enforced.

In support of the contention that plaintiff should be held to be a trustee *ex maleficio,* plaintiff cites the following cases: State ex rel. Cruzen v. Ellison, 278 Mo. 199, 211 S. W. 880; Prendiville v. Prendi-

ville, 284 Mo. 116, 223 S. W. 596; Bryan v. McCaskill, 284 Mo. 583; 225 S. W. 682; Phillips v. Jackson, 240 Mo. 310, 144 S. W. 112; Phillips v. Hardenburg, 181 Mo. 463, 80 S. W. 891; Thierry v. Thierry, 298 Mo. 25, 249 S. W. 946; Harrison v. Craven, 188 Mo. 591, 87 S. W. 962; O'Day v. Annex Realty Co., 191 S. W. 41; Powell v. Crow, 204 Mo. 481, 102 S. W. 1024; Williamson v. Frazee, 294 Mo. 320, 332, 242 S. W. 958; Meek v. Hurst, 223 Mo. 698, 122 S. W. 1022; and McNew v. Booth, 42 Mo. 192.

What is said by the court in each of the cited cases must be considered in the light of the facts in each particular case. In many of the cited cases the court was not dealing with an oral promise to purchase property at a foreclosure sale and hold same for the mortgagor. In the cases in which such a contract was involved, the facts show more than a mere violation of such a verbal promise. Nothing is said in any of these cases, when viewed in the light of the facts of each particular case, which conflicts with the views expressed in this opinion.

The statutes prohibit the enforcement of the alleged verbal promise upon which this case is bottomed. [Secs. 2967 and 3104, R. S. 1929.] As there was no showing made that would remove this verbal promise from the operation of the statute, it will not be enforced. This conclusion leaves no basis for an accounting between the parties, and necessarily determines both appeals.

The decree below should be reversed. It is so ordered. All concur