MIKE RONE and GLADYS MYRACLE, Trustees for HERBERT RONE, the bodily heirs of HERBERT RONE, WAYMAN RONE, the bodily heirs of WAYMAN RONE, RAYMOND RONE, the bodily heirs of RAYMOND RONE, the general heirs of GEORGE W. RONE and NANCY RONE v. ALICE WARD and ROBERT W. WARD, Appellants.—No. 40441. —212 S. W. (2d) 404.

Division One, May 10, 1948.

Rehearing Denied, June 14, 1948.

*Sam J. Corbett* and *Edward F. Sharp* for appellants.

*Morrell De Reign* and *Jones & Jones* for respondents.

[404] DALTON, C.—This is an action in equity to cancel a deed and determine title to described real estate in Pemiscot county. Judgment [405] was entered for plaintiffs and defendants have appealed.

George W. Rone is the common source of title. He died on July 4, 1943, and was survived by his widow, Nancy Jane Rone, and four children, Mike Rone, George W. Rone, Jr. (hereinafter referred to as Son Rone); Gladys Myracle and Alice Ward, and by the children of a deceased son, Charles Rone, towit, Margaret Fay Rone and Charles Ray Rone. The warranty deed, under which respondents claim, is dated June 25, 1942. It was signed by George W. Rone and Nancy Jane Rone, his wife (the latter by mark), and it was duly acknowledged before a notary public on September 5, 1942. It recited a consideration of One Dollar. A life estate was reserved in the grantors. The described property was conveyed in trust for specified beneficiaries and the duties of the trustees are fully set forth in the trust instrument. It was filed for record in Pemiscot county on October 31, 1942, prior to the death of George W. Rone. Appellants (defendants) charged that this deed was not delivered nor its delivery authorized by George W. Rone.

The warranty deed, under which appellants claim (Alice Ward, grantee) is dated July 15, 1942, and recites a consideration of one dollar and other valuable consideration. The same real estate is described as in the deed to respondents. The named grantor, George W. Rone, reserved a life estate for himself and wife. The deed is signed "G. W. Rone" and purports to have been acknowledged by G. W. Rone before C. S. Kirkpatrick, a justice of the peace, on the date above mentioned. The grantor's wife, Mary Jane Rone, did not join in this deed. In their petition respondents attacked this deed as a forgery and sought to have it cancelled and set aside and the cloud thereof removed from respondents' title.

Appellants state that the two principal questions presented by this record are questions of fact upon which the testimony of the witnesses is directly contradictory. The questions are whether the deed to respondents was ever delivered, and whether the deed to Alice Ward was signed by George W. Rone. Appellants first insist there was no competent testimony that the deed to respondents was ever delivered.

Respondents were in possession of the deed to them and it had been recorded in Pemiscot county, during the lifetime of the grantors. Respondents, relying upon the presumption of delivery from such possession, offered the deed in evidence, together with the certificate of the recorder of deeds showing the deed was recorded on October 31, 1942. After the deed had been received in evidence, Mrs. Gladys Myracle, one of the respondents, was cross-examined by appellants' attorney concerning the delivery of this deed, wherein she was one of the grantees. She testified that she was present and saw her father give this deed to her brother, Mike Rone, her co-grantee; that Mike Rone took the deed and other deeds to Caruthersville and had them recorded; and that, thereafter, her brother returned the deeds to her father, George W. Rone, and he delivered this deed and the other deeds to the grantees. She said, "he gave them to us."

Appellants now say that Mrs. Gladys Myracle was the only witness who testified concerning the delivery of the deed; that she was incompetent as a witness, being a grantee in the deed and the other party (grantor) being dead; and that her incompetency as a witness was not waived by cross-examination. No such objection was made at the trial. Mrs. Myracle was a witness for respondents, but she was not asked anything about this deed on direct examination. The evidence now complained of was all voluntarily developed by appellants' attorney on the cross-examination of the witness, and without protest, objection or motion to strike being made. The witness was questioned on the theory that she was competent to give the information sought to be elicited from her and her testimony was heard on that basis. It can not now be contended, on appeal, that the evidence should be disregarded because the witness was incompetent to give it. The incompetency of the witness was waived. McCune v. Goodwillie, 204 Mo. 306, 332, 102 S. W. 997. See, also, In re Trautmann's Estate, 300 Mo. 314, 254 S. W. 286, 288; Hodge [406] v. St. Louis Union Trust Co., (Mo. Sup.), 261 S. W. 67, 72.

Appellants further say that the testimony of Hon. Everett Reeves, an attorney from Caruthersville, Missouri, who testified on behalf of respondents, shows that this deed to respondents was not delivered. Mr. Reeves testified that, about 1943, he was retained by appellants in connection with a contemplated suit to break or set aside the will of George W. Rone, deceased; that his employment also contemplated an action to set aside all conveyances made by George W. Rone in his lifetime to his various children and grandchildren, which deeds were then of record; that the proposed suit was "on account of undue influence and the mental incapacity of George W. Rone to make a will or to execute these conveyances"; that a settlement was made with the heirs of George W. Rone, deceased, by which settlement Mike Rone, Son Rone and Gladys Myracle deeded to Alice Ward a three-fourths interest in 120 acres of land devised to them

and Son Rone further gave her a check for $2000; that this settlement was in addition to a bequest of $4000 in cash and all of her indebtedness as given to Alice Ward by her father's will; and that at no time during his employment was he ever shown the deed under which appellants now claim the described property.

Mr. Reeves further testified that, in making investigation of matters before settlement, he assumed he talked to Mrs. Ona Haggard, at least he talked to some old lady who nursed George W. Rone during his last illness. He could not identify her as the person pointed out in the court room. He identified, as in his own handwriting, a document handed to him for identification, and he then testified as follows: "I don't recall at this time whether that memorandum was made at or immediately following my conference with the lady whose name you mentioned, or whether or not I made the memorandum from statements made to me by Mr. and Mrs. Ward, but I would say the fact remains that substantially that same information was conveyed to me by the lady whose name you mentioned. . . . Whether I made the memorandum on account of that statement she made to me, or I made it on account of the statements Mr. and Mrs. Ward made to me, that I couldn't say."

The memorandum identified was, as follows: "Mr. Geo. W. Rone was 79 yrs. old when he died. Died July 4, 1943. Deeds were not delivered, though widow got deeds out of safe and sent them by Mike to be recorded. After they were recorded they were taken back by Mike and then placed in safe until they were taken out by appraisers. Mr. Rone said after deeds were made he did not want them delivered until after his death—all the children knew this, including Mrs. Ona Haggard, the nurse."

When this memorandum was offered in evidence, objection was made on the ground that Mr. Reeves could not recall who gave him the information and could not identify Mrs. Haggard; and that the exhibit offered was "hearsay in view of the deposition of Mr. Reeves and especially since Mrs. Haggard hasn't testified in his case for either side." The court withheld his ruling on the objection and the matter was not again called to his attention. Mrs. Haggard did not testify. We find no evidence in the record to sustain appellants' contention that the memorandum was a statement "showing clearly the facts as related to him (Mr. Reeves) by all of the interested parties, including the plaintiffs in this lawsuit." The written memorandum was hearsay and inadmissible. No other evidence was offered on the issue of delivery.

The delivery of a deed with the intent of the grantor to pass title to grantee at once is, of course, essential to its validity. Klatt v. Wolff (Mo. Sup.), 173 S. W. (2d) 933, 936; Galloway v. Galloway (Mo. Sup.), 169 S. W. (2d) 883, 888; Blackiston v. Russell, 328 Mo. 1164, 44 S. W. (2d) 22, 26. The trial court found that the deed to re-

spondents "was made, executed and delivered and duly recorded . . . during the lifetime of said George W. Rone." This finding is fully sustained by the record. The finding of delivery does not rest alone upon the testimony of Mrs. Myracle as to that fact. No competent [407] evidence was offered to destroy the presumption of delivery arising from the fact that the grantees were in possession of the deed. See, Meador v. Ward, 303 Mo. 176, 260 S. W. 106, 107. Further, the record shows that the deed was recorded during the lifetime of George W. Rone with his knowledge and consent. These facts have strong evidentiary value on the question of delivery and the grantor's intent, Burke v. Adams, 80 Mo. 504, 511; McCune v. Goodwillie, supra (204 Mo. 306, 336, 102 S. W. 997); Chambers v. Chambers, 227 Mo. 262, 283, 127 S. W. 86; Burkey v. Burkey (Mo. Sup.), 175 S. W. 623, 624; Deer v. King (Mo. Sup.), 30 S. W. (2d) 980; Southern v. Southern (Mo. Sup.), 52 S. W. (2d) 868, 870; Jones v. Jefferson, 334 Mo. 606, 66 S. W. (2d) 555, 559; Zumwalt v. Forbis, 349 Mo. 752, 163 S. W. (2d) 574, 577. Appellants' assignment that there was no competent evidence of delivery is overruled.

Was the deed to appellants signed by George W. Rone? Plaintiffs' Exhibit 1 was the deed from George W. Rone and wife to respondents. The signature of George W. Rone on this deed was admitted. Exhibit 2 was the deed sought to be set aside. It is signed "G. W. Rone," and the signature is in question. Exhibits 3, 4, and 5 were checks dated respectively July 18, July 27, and July 18, 1942. Each is signed "G. W. Rone." There was evidence that the signature on these checks were the authentic and genuine signatures of George W. Rone and they were admitted for the purpose of comparison.

R. D. Ellington of the Farmer's Bank of Portageville had been in the general banking business for about 40 years. He had been familiar with Mr. Rone's signature for about 35 years, since Rone did his banking business principally with Mr. Ellington's bank. Mr. Ellington compared the signatures, identified Mr. Rone's signatures on Exhibits 1, 3, 4, and 5, and, with reference to the signature on Exhibit 2, he said: "There is a difference in the signatures. There is a difference in the 'R' that Mr. Rone usually made and the 'W' doesn't look hardly right. I wouldn't believe G. W. Rone signed it. . . . Well, there is no use to mince words about it. I said I don't believe he signed it. I don't believe that is his signature."

Mr. W. R. Secoy, assistant cashier of the Farmer's Bank of Portageville had been in the banking business 17 or 18 years, had known Mr. Rone 10 years and was familiar with Mr. Rone's signature in cashing his checks. After comparing the signature on Exhibit 2 with the other signature, he testified: "I wouldn't consider it the same handwriting. . . . Well, his 'R' is not made the same and his letters here at the back—this 'E' doesn't come down as far as Mr. Rone usually writes

his. It stops. And the 'W' isn't quite as open as Mr. Rone gener-ally writes his. It doesn't seem the same to me. . . . It doesn't appear to me like his handwriting.''

J. C. Welman, president of the Bank of Kennett and in the banking business 22 years, compared signatures on the several exhibits and then with reference to the genuineness of the signature on Exhibit 2, testified: ''I would say that in my opinion there is enough dissimilarity to cause me to doubt that it is. . . . Well, the signature on this deed is some more firm than those on the three or four exhibits you have, and there is a distinct difference in the formation of the 'W'. The 'R's are quite different and the finish of the 'e' is quite different.''

Wayne Gum, assistant cashier of the Cotton Exchange Bank of Kennett, in the banking business for 5½ years and familiar with signatures on checks and notes, compared the exhibits and with reference to the signature on Exhibit 2, testified: ''In my opinion it isn't the same handwriting. . . . Well, the bottom of the 'G' seems to be made differently, and the 'R', there is more dissimilarity in the 'R' and 'G' than there is in the 'W'. There seems to be quite a bit in the 'G' and the 'R'. . . . Well, the 'W' on the checks —the bottom part seems to flare out on the checks and the deed doesn't have that characteristic.''

Charles G. Ross, formerly cashier or assistant cashier of the First State Bank of Caruthersville for about 10 years and familiar with signatures on checks and other [408] instruments, compared the sig-nature on the exhibits. He didn't think the signature on Exhibit 2 was in the same handwriting. He testified: ''Well, the 'R' is very dis-tinctly different. The 'W' has some difference. And through all three of these checks the 'e' at the end of the signature sort of trails up at the finish and on this one it comes to a very definite stop. The tops of the 'n's on the checks have a rather jagged top and the top of this one is inclined to be round. I would say this was written by somebody who wrote a little more—a little more accustomed to writing.''

As stated, the acknowledgment to this deed was dated July 15, 1942 and purports to have been taken on that date before C. S. Kirkpatrick, a justice of the peace of Little Prarie Township in Pemiscot county. Kaiser Steinbraker, a prior justice of the peace of this township, resigned the office and his resignation was accepted by the county court of said county on June 30, 1942. On August 13, 1942, C. S. Kirkpatrick presented an application for appointment for the unex-pired term. On the same date he was appointed, commissioned and took the oath of office. Mr. Kirkpatrick, who was 76 years of age, testified that he had no legal training and had prepared no deeds of conveyance while in office. He had taken only one acknowledgment and that was for Kaiser Steinbraker and Mr. Bob Ward. He had known Steinbraker for 35 years but had not known Bob Ward, until they came in his office to acknowledge the deed. He identified his signature on Exhibit 2 and said that he did not take the acknowledgment on

July 15, 1942, but took it late in January or February, 1946. Stein-braker first approached him about the deed at the court house. They went to Judge Schult's office and then Steinbraker went out and brought in Mr. Ward. The deed had been filled out and Mr. Kirkpatrick did not look to see if it had been signed. He had never known Mr. Rone and didn't know he was dead. He testified: Kaiser asked me if I would acknowledge the deed, and I said, 'Well, if there's no trouble, I don't want to get in no trouble, but if it is alright to do it I will acknowledge it.' And they told me then that Mr. Ward's wife had had a deed and had lost it or it had gotten away some way, and that Son Rone was willing for her to have a deed to this land, Both of them told me that, so I acknowledged the deed.'' He never took an acknowledgment in Mr. Hooker's office at any time. He received $50 from Steinbraker at the time the acknowledgment was signed. Later, Mr. Ward asked if Steinbraker paid him. Mr. Ward said that as soon as he got a little money he would pay him some more. The deed was not acknowledged in the court house, but in Hazel's saloon, when Kaiser and Ward brought the deed there.

We have previously set out the testimony of Mr. Reeves that he never saw this deed to appellants while he was representing them with reference to setting aside the will of George W. Rone, deceased, and the deeds to respondents and the other heirs.

Mrs. Gladys Myracle testified concerning the compromise settlement with appellants, as testified to by Mr. Reeves. She further testified that George W. Rone, prior to his death, had deeded 200 acres each to Mike Rone, Charles Rone, Son Rone and Mrs. Myracle, as well as the tract to respondents as trustees. At one time there had been a deed prepared to Alice Ward for the land in suit here. The forms for a first set of deeds were delivered to George W. Rone, but he returned them to Morrell DeReign at Caruthersville and some more deeds were prepared. When the next ''bunch of deeds'' were prepared, Alice Ward was left out at the request of George W. Rone. These second deeds were taken by George W. Rone from Mr. DeReign's office to the Rone home and placed in a safe. When George W. Rone was ready to go to Mayo's Hospital at Rochester, Minnesota, he took the second ''bunch of deeds'' out of the safe and delivered them, as hereinbefore stated.

Appellants' evidence, Morrell DeReign, an attorney of Caruthersville, Missouri, being called as a witness by appellants, testified that on one occasion Alice Ward, Gladys Myracle and Son Rone brought him some descriptions to prepare deeds. [409] One of the deeds was to Alice Ward for the real estate involved here. Deeds were also drawn to Son Rone, Gladys Myracle, Mike Rone and Charley Rone's children. The deeds were mailed to Son Rone. When the last set of deeds were prepared, the land described in the prior deed, ''that Mr. Rone was going to give Alice Ward,'' was deeded to respondents as trustees.

Ten days to two weeks intervened between the preparation of the first set of deeds and the second set. The first set provided for "outright deeds," with reservation of rents and profits, but Mr. Rone came back and "entailed practically all that land and drew up life estates and trusteeships in the bodily heirs." At that time no deed was drawn to Alice Ward. Witness did not draw Exhibit 2. All of the first set of deeds, including the deed to Alice Ward, were returned. Exhibit 1, the deed to respondents, was prepared under witness's supervision and it was the last deed drawn for George W. Rone. When the first "bunch of deeds" were returned by Mr. Rone, witness tore them up and put them in the waste basket. They were all blank, none had been signed. All of the second "bunch of deeds" were given to George W. Rone. Witness later found of record the deed in controversy here, dated July 15, 1942, recorded March 9, 1946, and he notified Mike Rone and Gladys Myracle.

W. K. Steinbraker testified that he drew the deed to Alice Ward, Exhibit 2, in Mr. O. E. Hooker's office, where he was in the habit of writing deeds. Mr. and Mrs. Ward and George W. Rone came in. Mr. Rone signed the deed in his presence and some one got Mr. C. S. Kirkpatrick and brought him in and witness saw him take the acknowledgment. Witness did not give Mr. Kirkpatrick $50 to take the acknowledgment. The acknowledgment was not taken in Judge Schult's office or in a booth in Hazel's saloon. Mr. Hooker was not there when the deed was completed or he would have taken the acknowledgment. Witness had not drawn any deeds for Mr. Rone before and did not inquire about his wife. The form of the deed and the form of the acknowledgment looks like there had been a change of typewriter ribbons. There were two or more typewriters available. He didn't know who would take the acknowledgment, when the deed was drawn. He could have used another machine in writing the acknowledgment form. Mr. Rone paid him $2.50 for preparing the deed. The deed was handed to Mr. Rone and he gave it to Alice Ward.

Mr. O. E. Hooker testified that he remembered Bob Ward coming in his office and saying George W. Rone wanted to make a deed to Mrs. Ward. He could not fix the date. He did not recall seeing Mr. Rone. He did not recall what he told Mr. Ward, but he did not draw the deed.

Mr. Bob Ward testified that he did not promise to pay Mr. Kirkpatrick some more money as soon as he got it.

Bill Ward, a brother of Bob Ward, had worked for George W. Rone and was familiar with his signature from checks received. He examined the signature on Exhibit 2 and said he believed it was in Mr. Rone's handwriting. "It looks mighty like the way he used to write me checks." He saw Exhibit 2 at his brother's house along in 1942. Mrs. Ward showed him the deed, he looked at the signature and he saw that "Aunt Nanny's name wasn't on the deed." He admitted the signature on Exhibit 2 was a little different from the signatures on the checks.

Appellants offered to show by this witness "that George W. Rone told him . . . he intended for each of his children to have the places where they lived as their homes." Appellants further offered to show by C. F. Myracle, that George W. Rone "told him at various times and occasions that he expected to give his children the places where they lived as their homes." The offers were refused.

Norval Ward, son of Alice Ward, testified that he saw Exhibit 2 at his mother's home in July or August 1942. It was made to his mother and signed by his grandfather and had C. S. Kirkpatrick's signature on it on the other side.

. At the close of the testimony the trial court said: "Well, I have examined the signatures and heard the testimony as we went along . . . this Court is led to conclude that the handwriting on Plaintiffs' Exhibit '2', that the defendants rely **[410]** on, is a freer, bolder and firmer hand, with a great many dissimilarities in (sic.) the signatures appearing on Exhibits '1', '3', '4', and '5'. That is the way I would judge handwriting, whether or not it is free and looked like it. Exhibits '1', '3', '4' and '5' are a kind of labored signature. Looking at the signature on Exhibit '2' as a whole it is apparently not the same handwriting. . . . I think the proof is pretty overwhelming that Exhibit '2' was not the genuine act and signature of George W. Rone."

Appellants assign error on the court's action in excluding the evidence of witnesses Bill Ward and C. F. Myracle concerning conversations with George F. Rone, wherein he expressed his intention to give each of his children the homes in which they lived. There was other evidence that Alice Ward had lived on the land in question for several years. Appellants contend that the evidence offered and rejected was admissible in support of Steinbraker's testimony concerning the delivery of the deed to Alice Ward; and that the intention of the grantor to deliver the deed could be manifested by acts, words, or both. Forster v. Clark, 351 Mo. 59, 171 S. W. (2d) 647, 648 (4); Klatt v. Wolff, supra. We think the evidence was competent as evidencing an intention to do what appellants' other evidence tended to show was subsequently done. Brightwell v. McAfee, 249 Mo. 562, 580, 155 S. W. 820; West v. Duncan, 215 Mo. App. 423, 249 S. W. 127; Mutual Life Ins. Co. v. Hillmon, 145 U. S. 285, 12 S. Ct. 909, 36 L. Ed. 706, 710; 20 Am. Jur., Evidence, Sec. 585, p. 491; 37 C. J. S. 1007, Sec. 256; 37 C. J. S. 1013, Sec. 260. The evidence will be considered on review, however, it is only cumulative. The fact that a prior deed had been drawn to convey this land to appellant, Alice Ward, is not questioned. The intention at that time to convey, however, was not carried into effect.

In an equity case, this court may consider any competent evidence that has been offered and rejected and review the cause upon the competent evidence. Edinger v. Kratzer (Mo. Sup.), 175 S. W. (2d)

1020

807, 811. Clear, cogent and convincing evidence is, of course, required to set aside a deed and appellants say that the evidence does not measure up to that standard. Appellants further emphasize the fact that witnesses Secoy, Welman, Gum and Ross refused to say positively that Mr. Rone did not sign Exhibit 2, or that he could not have signed it. By stipulation of the parties, the original exhibits have been filed with the clerk for our inspection.

Only witnesses Reeves and Kirkpatrick testified by deposition, the other witnesses appeared personally before the trial chancellor, who, after seeing them and hearing them testify, found in favor of respondents. This being an equity case we review the evidence, determine its weight and value and reach our own conclusions, giving due deference to the findings of the trial chancellor. Edinger v. Kratzer, supra, 175 S. W. (2d) 807, 813; Bowzer v. State Highway Commission (Mo. Sup.), 170 S. W. (2d) 399, 402. In our opinion the appellants did not satisfactorily account for the delay in recording the deed under which they claim, nor show cause for not presenting this deed to Attorney Reeves, when employing him to contest the will and to set aside the deed subsequently conveying the same land to respondents. No reasonable explanation was made for the deed being dated and acknowledged by C. S. Kirkpatrick on a date almost a month before Mr. Kirkpatrick had even applied to the county court for appointment as a justice of the peace. We have reviewed the evidence, examined the exhibits and reached the conclusion that the trial court's finding, that Exhibit 2 was not signed by George W. Rone, should be sustained. It will not be necessary to consider the validity of the deed independent of the acknowledgment, as suggested by appellants. Other assignments not briefed will be considered abandoned.

The judgment is affirmed. *Bradley* and *Van Osdol, CC.*, concur.

PER CURIAM:—The foregoing opinion by DALTON, C., is adopted as the opinion of the court. All the judges concur.