**Victor E. SCHULTZ, Appellant,**

v.

**Julia L. CURSON, Respondent.**

No. 52138.

Supreme Court of Missouri,
Division No. 2.

Nov. 13, 1967.

Motion for Rehearing or to Transfer to Court En Banc Denied Dec. 11, 1967.

Tom R. R. Ely, St. Louis, for appellant.

McElwee & McElwee, Claude W. Mc-Elwee, Claude W. McElwee, Jr., St. Louis, for respondent.

PRITCHARD, Commissioner.

Victor E. Schultz sued Julia L. Curson by Count I of his second amended petition to set aside deeds to a tract of land upon which the Hill Top Trailer Court is located in south St. Louis County (on U.S. Highway 66, in Sappington, and a residential property, Lot 12 of Terrace Gardens Plat No. 2, in St. Louis County). For grounds as to the prayed relief under Count I, Victor alleged basically that the deeds were without consideration; it was not his intention to convey to Julia or divest himself of his one-half interest; and that the conveyances were made with the understanding or agreement that Julia would reconvey to him upon request after the claims and interest of his then wife, Pauline Schultz, were settled. As to the Hill Top Trailer Court property, Victor alleged Julia's intended fraud to refuse to reconvey to him at the time the quitclaim deed was executed. As to the Terrace Gardens property, it was alleged that Julia failed and refused to carry out their agreement to reconvey upon his request.

As to Count III, Victor sought dissolution of a partnership alleged to exist between him and Julia by which they accumulated real estate and the Hill Top Trailer business, for approximately 30 years, held as tenants in common, which partnership continued as before after the deeds to said real estate were made and delivered to Julia.

Julia answered Count I alleging that any agreements to reconvey (which she denied existed) were not in writing and were violative of the Statute of Frauds,

§ 432.010, RSMo 1959, V.A.M.S., and void. As to Count III, Julia answered that the alleged partnership is and was founded upon an illegal consideration, is null and void as against public policy and is the result of the unlawful and immoral relations between Victor and herself. She prayed dismissal of both counts. By counterclaim Julia sought an injunction against Victor from interfering with her real estate and trailer court business, accepting rents thereon, and for an accounting of rents collected by him from tenants of the trailer park business and a judgment therefor.

The judgment of the trial court was for Julia on Counts I and III, upon which Victor elected to stand, on these paraphrased findings of fact: That the quitclaim deed to the Hill Top Trailer property by Victor and his then wife, Pauline, conveyed all their right, title and interest, and was freely and voluntarily executed; that there was no agreement, memorandum or note in writing whereby Julia agreed to hold title for the use and benefit of Victor, or where she agreed to reconvey a one-half interest in the same to him; that Julia borrowed $42,000 secured by a first deed of trust on said property and paid all amounts which she and Victor were jointly indebted: $14,536.25 to Allen and Frieda Krueger as the unpaid balance on their note, $1,671.12 to Skelly Oil Company (a judgment), $9,500 to Claude W. McElwee and Oscar Moberg (attorney fees allowed in the partition suit), $7,362.41 to D. Jeff Lance (receiver fees in the partition suit), and $59.90 court costs, and the debt, $2,513.77, to Pauline Schultz and Fred M. Gossom, her attorney, due from Victor; that the quitclaim deed to the Terrace Gardens residential property was made by Victor for the purpose of placing that real estate beyond the reach of his (judgment) creditor, Fred M. Joseph, and that there was no agreement memorandum or note in writing whereby Julia agreed to hold the title to the residential property for Victor's use or benefit or where she agreed to reconvey a one-half interest therein to him. A further finding was made that neither tract was held by Victor and Julia as partners when the quitclaim deeds thereto were executed.

As grounds for the decision, the trial court assigned: That the alleged parol contract whereby Julia is alleged to have agreed to reconvey a half interest in both tracts was within said § 432.010, RSMo 1959, V.A.M.S., and that the mere taking of the alleged verbal agreement to reconvey, and the bare alleged violation thereof by Julia, would not amount to fraud and would not take the alleged agreements from within said statute; that under the law of contribution the payment of the joint indebtedness by Julia, she and Victor benefitted equally, no part being paid by him, and he became indebted to her for one half of each of said amounts borrowed by her from the Gravois Bank, which constituted part of a valuable consideration for the quitclaim deed to the Hill Top Trailer property; and that the payment by Julia of Victor's debt to Pauline Schultz and Fred M. Gossom, her attorney, also constituted part of a valuable consideration for the Hill Top Trailer property deed; that the tenancy in common of both properties did not of itself establish a partnership between Victor and Julia whether they did or did not share any profits made by the use of said real estate because of the provisions of Subsections (2) and (3) of Section 358.070, RSMo 1959, V.A.M.S.; that Victor failed to prove by clear, cogent, convincing and credible evidence that he and Julia were partners or that the real estate was partnership property owned by them as partners. The title in the real estate was confirmed in Julia, and Victor was perpetually enjoined and restrained from interfering with the use and occupancy of the real estate by Julia.

The evidence is that Victor and Julia met in 1931 or 1932; Julia testified it was in 1933. Victor was then married to Edith Crenshaw Schultz, who died about 1951, never having been divorced from her.

Julia was divorced from her husband, Arthur L. Curson, on November 18, 1932. Victor and Julia were never married. In 1933, she borrowed $50, and he had $35, and they went to California where he worked in a cleaning and pressing establishment. Victor was then about 30 years of age and Julia was about 7 years older. They stayed in California three or four months, then using money from pawning his watch and her jewelry. They returned to St. Louis and rented rooms on Lindell and Delmar Avenues as husband and wife.

Victor testified that on the return trip he and Julia were talking about their future and she said, "Well, we'll put our money into this venture and we'll share it and share it alike, and if we have good luck and success, we'll go forward and we'll share it, and if we get to a point where we want to agree or disagree, we'll sell what we have and split the money and share it. In other words, we'll pool everything that we have." Julia denied having that conversation, but in any event in 1935 or 1936 they purchased a house at 6456 Wanda Avenue in St. Louis, taking title as "Victor E. Schultz and Julia L. Schultz, his wife." A one-seventh interest in this house had been inherited by Julia from her mother. She and Victor lived in the Wanda Avenue property for about five years, paying on the note which they executed. He was working as a used car salesman. In 1942 Victor and Julia moved to Chicago where he worked for General Motors, and she worked for Jefferson Electric. Prior to the time they moved to Chicago they sold the Wanda Avenue property and purchased a house on Kennerly Road in southwest St. Louis County. Title to the Kennerly Road property was taken by them in the same manner as the Wanda Avenue home. They lived in Chicago until 1945, and accumulated from earnings in the Villa Park Trust & Savings Bank to January 6, 1945 the amount of $4,624.29, under the names "Victor E. or Julia L. Schultz." In 1945 they returned to St. Louis and purchased a four-family flat at 2210-12 South 18th Street which was also conveyed to them jointly as husband and wife. In 1948 they went back to Chicago and purchased in their joint names the unexpired term of a trailer court lease. That property had a Texaco service station, 5 cabins and 25 trailer spaces. Victor ran the service station and sold bottled gas; Julia took care of the cabins and did the cleaning and washing. They had opened another joint bank account in the La Grange State Trust and Savings Bank, into which the gross earnings ($900 to $1200 per month) from the trailer court were deposited, and in which was accumulated $3,508.75 to March 29, 1951, when the lease expired and they again returned to St. Louis. They also had two trucks, an Alma House Trailer and four automobiles which Victor had purchased in his spare time for resale. The Kennerly Road property was sold and from the proceeds, $10,000, they purchased a house at 9848 Hill Top Drive for $25,000. Title was again taken "Victor E. Schultz and Julia L. Schultz, his wife." Two weeks later they purchased the Hill Top Trailer Court at 9618 Highway 66 from Allen and Frieda Krueger for $50,000. A deed of trust and note were given on this property with payments prescribed at $170 per month. They had about $24,000 from earnings and profits prior to these purchases, and a loan secured by chattel mortgages on the automobiles was also obtained for the real estate down payment.

Victor and Julia operated the Hill Top Trailer Court thereafter and up until 1956 both had the right to write checks on the Hill Top Trailer Court account in which the gross earnings were deposited in the Gravois Bank. After 1956, the account was changed so that Julia's signature was the only one authorized for withdrawals.

In 1956, after Victor learned that his first wife, Edith Crenshaw Schultz, had died, he married Pauline Wilson. When he told Julia about it, she said she didn't believe it and told him to get a divorce and come back home. This was the

start of the difficulties between Victor and Julia. According to Julia, Victor was not turning over his collections of trailer space rents or accounting to her therefor. On December 20, 1956, Julia filed a partition suit against Victor and asked for the appointment of a receiver (which was done) to take charge of Hill Top Trailer Court. After having lived with Pauline in other trailer courts for about five months, Victor separated from her on February 4, 1957. He first filed suit for divorce against her in Kansas City, but dismissed it and filed another against her in St. Louis County on July 5, 1957.

The receiver had charge of the property twelve to thirteen months, and Victor and Julia had a conversation about the partition suit. According to Victor, Julia said, "We'll get it out of court and we'll have to pay our bills off," and she said, "I've got a little money I've put away to pay our bills off and you come on back and we'll just take up where we left off. We'll share and share alike and pool everything together, the same as we did for years." Julia's version was that when Victor moved Pauline moved into the trailer court to live, buying "a great big new trailer" then going off on a honeymoon, she had to protect her interest. Pauline was going to quit her job and help him manage the trailer court. "And where was I going to be? They were going to float me down the river. I was told that. * * * Well, something had to be done. He was collecting all the rents." Julia further testified that she never had an agreement with Victor about the property, nor did she discuss how much interest he had therein. He didn't assert any interest until he brought blank quitclaims to her (after the deeds in controversy were signed and delivered).

The deed to the Hill Top residential property, Defendant's Exhibit A, executed, acknowledged and delivered by Victor E. Schultz and Pauline Schultz, his wife, to Julia L. Curson, also known as Julia L. Schultz, is absolute on its face. So also with the deed to the Hill Top Trailer Court property, Defendant's Exhibit B. Neither deed contains any restriction or condition. There is no other writing shown by the record of the trial executed by Julia of an agreement whereby she would hold the property for the use and benefit of Victor and whereby she would reconvey a one-half interest to him when things were cleared up. These two deeds are dated February 4, 1959, and were filed for record on March 14, 1959. The property covered by Defendant's Exhibit A, the Hill Top residential property, was sold in 1964, according to Julia, for less than was paid for it, and the excess over the mortgage thereon was used to pay taxes. Victor testified that he secured an $827.11 reduction on the taxes (1959 through 1963). That residential property is not involved in the decree. However, Julia testified that he told her he was going to deed the property to her at the time Defendant's Exhibit A was acknowledged. She testified further that she had no conversation with him about the deed, Defendant's Exhibit B.

On January 27, 1960, Victor made an unrestricted, unconditional deed (Plaintiff's Exhibit 18) to Julia of the property, Lot 12 of Terrace Gardens Plat No. 2. He procured the signatures of the trustees (as apparently required by a recorded agreement concerning subdivision restrictions on transfers). Prior to this conveyance Fred M. Joseph had filed suit against Victor for counsel fees. Victor went to attorney Havener and asked that a deed be "fixed up" to transfer his interest in the Terrace Gardens property out of his name. Both he and Julia signed the deed and both acknowledged it before Mr. Havener as Notary Public. Over objection as being in violation of the Statute of Frauds, Victor testified that he had an agreement with Julia wherein she stated, "Well, I'll sign it back over to you when we know that we're in the clear," and that a day or two later she told him that her lawyer told her the best thing to do was to sign it over to her and they would be on the

safe side. Julia testified that at the time of the execution of the Terrace Gardens deed, Victor told her he wanted to get everything out of his name. There were no conversations about the deed or property, and she did not state anything or make any promises to him in regard to the property. She said nothing.

Upon this whole record involving conflicting testimony the matter of whether there was *any* agreement at all could have been ruled adversely to Victor merely upon the trial court's function to pass upon the credibility of witnesses. Especially is this true when there is considered the highly evasive and equivocal testimony of Victor upon his cross-examination, and the conflicts in some of his testimony with documentary evidence. However, the trial court did not place the denial of Victor's right to recover solely upon credibility, but basically upon the fact that there was no *written* agreement by Julia to reconvey to Victor, that any oral agreement was in violation of the Statute of Frauds, and additionally, with respect to the Terrace Gardens property, that Victor did not come into court with clean hands in that he executed that deed to avoid his judgment creditor, Fred M. Joseph. The inquiry then is whether Victor adduced sufficient clear, cogent and convincing proof of facts and circumstances amounting to fraud so as to remove any oral agreement to reconvey from the operation of the statute.

Victor claims that the trial court erred in failing to find that the oral contract to recover the property was not within the Statute of Frauds where he performed his part of the agreement. As to such performance, he says that he "did resume his former relationship prior to the partition suit and worked and managed the trailer court and attended the business as before." Victor testified that after the quitclaim deeds were delivered before and after his divorce he lived in the Terrace Gardens home with Julia at her request; that he took possession of the Hill Top Trailer Court, appearing there every day opening up in the morning; relieving sewer lines from tree root stoppages; taking care of electrical troubles and reading meters; taking care of road work, tree trimming; hiring extra help when the work was too hard or heavy to do himself; that Julia did nothing other than drive through the park once in awhile; that he collected rents along with Julia; and that these duties were performed up to the time of trial. After Julia refused to reconvey to him she locked him out of the house and refused to let him in the Terrace Gardens home. He went to the trailer court and set up an army-type cot in what used to be the men's toilet and shower room, where he slept. At the time of trial he got up every morning and swept the laundry room and office. He bought faucets; replaced sewer lines; did electrical work; he had a problem with the City of Crestwood and did wiring; he did road work—hauling rock in a two-wheeled trailer and putting it on roads. He rented trailer spaces, collected the rent and put it in a special account, "Victor Schultz, co-owner and special agent for Julia Curson." He paid bills out of cash money he had from selling. He replaced a hot water heater with cash, and Julia didn't approve of that. He paid the back taxes from the money received from the sale of the Hill Top residence, and arranged that penalties therefor be reduced.

Mearl Hill testified she paid Victor rentals in May and June, 1959; and over the past six years had paid it to both Victor and Julia. In a conversation, Julia told Mearl that she too had lived in Hinesdale, Illinois, and "Well, you know, that's where we got our start in this business."

Martha B. Cobb paid Victor rent for the month before trial, and testified that she had paid rent to both of them. She talked with Julia in March, 1965, and Julia said, "Well, now, we could have been here and we could have been in Florida and seeing the sunshine instead of this awful snow, and we could have got some manager to take care of the court."

Portions of Julia's deposition were read in which she testified that after the receivership Victor was there in the house with her, "But that is all"; that he did attend to some things at the trailer court, "[O]nly when there was work involved somebody else would do the work and I would pay the bill. He would stand over them and tell them what to do"; and "Q. 'Well, didn't he have authority, Mr. Schultz, any authority, Mr. Schultz, to also (dash, dash).' A. 'He did whatever he wanted to do.' Q. 'Didn't you feel that he had a right to manage it?' A. 'No, I didn't feel he had a right to anything.' "

It was brought out by the testimony of Al Steimel, Chief of Police of the City of Crestwood, that in City Hall proceedings from 1956 to a recent date (concerning maintenance of a nuisance and unsanitary conditions) Victor denied any ownership or control of the Hill Top Trailer Court. He charged the police department with arresting the wrong person. He had counsel at the time and said that he was a friend of the owner and just stayed around the place occasionally. Victor told Katheryn Steimel, court clerk of the City of Crestwood, "I have nothing to do with the place. I'm just a friend. That's the reason I'm around there." Victor told Oliver Paske at the trailer court in May and June, 1964, that he was not the manager, did not work there, he was not getting paid, and was just sitting there.

Julia testified that she did not live with Victor as man and wife after his divorce from Pauline. She let him come back, "and that's all." She let him come back in the house. In December, 1964, Victor collected the biggest part of the rents and did not account to her for them. On her deposition, Julia testified that Victor just came and took over, being there all the time "walking around, giving orders to people working there." She did not employ labor, but she paid for it. She operated the Hill Top Trailer Court from 1956, 1957 or 1958 with Victor, but that Victor's operation of it was not with her permission—she "didn't want him to." Victor would also rent spaces to tenants, and collected the money which he would keep. She collected money also and paid the bills.

■ Although the evidence would support a finding that Victor and Julia were engaged in a joint enterprise wherein their profits and respective wages were invested in real and personal properties, and that they had a partnership (in at least the trailer court property) up until the partition suit was filed or to the time the quitclaim deeds were executed, as above indicated, such evidence would also support a finding that there was no agreement as to reconveyance by Julia to Victor of the properties. The defense that the alleged oral agreement was in violation of the Statute of Frauds, supra, is, however, an affirmative one. Large v. Frick Co., 215 Mo.App. 232, 256 S.W. 90, 92 [11–14]; Hyde v. Henman, Mo.App., 256 S.W. 1088, 1091 [6]; Linneman v. Whitley, Mo.App., 402 S.W.2d 76, 79 [6]. The alleged representations, understanding and agreements, if any, were specifically denied by Julia, and then she pleaded that any of the same, not being in writing, are within the Statute of Frauds and "are null, void and of no legal effect and are unenforceable in this Court." For the purpose of disposing of the issue on this appeal the alleged oral agreement to reconvey is treated as having been proved. Then, did Victor prove facts which would make the statute inapplicable? There was conflict in the testimony as between Julia and Victor as to whether he entered upon the alleged oral agreement and performed his part thereof by attending the business as before. He testified that he did, but Julia testified that he was there only, and that any work or management done by him was not with her permission. He kept rents collected by him; she used rents collected by her to pay bills. Julia's position that Victor had no legal rights there is fortified by Victor's statements that he did not own or manage the trailer court made to the

police court officials during the time in controversy. Additionally, there is in evidence as admissions against interest Victor's answers to propounded interrogatories in Pauline's divorce suit that he was not then the "owner, operator, proprietor or in any other capacity engaged in any business," and when asked on deposition in that suit, "Do you own any real estate other than this Hill Top Drive address that you have already made mention?" he answered, "I don't even know that I own it," and "My name is on the deed for the trailer park, probably, too." When further asked, "How long have you been in the trailer business at that particular trailer park?" he answered, "Well, I don't know that I've been in the business there or not, but I have been working there since 1951." He further stated that he and Julia conducted the business jointly until January 4, 1957, and at the time of the deposition testified that he was not then associated with the trailer park.

Victor's cited cases upon performance of an oral promise to convey are of no aid to him. In Easley v. Easley, Mo., 333 S.W.2d 80, the grandson proved convincingly to the trial court and this court that' he entered possession, built a house, and performed services to his grandfather pursuant to their oral contract. In Anderson v. Abernathy, Mo., 339 S.W.2d 817, possession had been taken and improvements were made on the property and the evidence was clear and convincing that there existed an oral contract to sell a lot. In Cave v. Wells, 319 Mo. 930, 5 S.W.2d 636, a widow and her daughter orally agreed to a land division. The widow went into exclusive possession and performed her part of the agreement. It was held that failure of performance of the oral agreement by the daughter would work a fraud on the widow and the court decreed a fee simple title in the widow as to her portion.

 The contention of Victor that there was no intention upon his part to divest himself of his interest in the real estate is met by the fact that the deeds in question are absolute on their face, with usual words of grant, and Julia's testimony that he told her he was going to deed the trailer court property to her, and that nothing was said by her concerning either that property or the Terrace Gardens property. It is clear that Victor wanted to get the latter property out of his name to avoid the judgment held by Fred M. Joseph. It was Victor's acts which caused the execution and acknowledgments of the deeds. There is no question but that the deeds were delivered to and accepted by Julia. It was a question of fact as to whether Victor intended to pass his title and interest absolutely, and it cannot be said here that the evidence established a lack of such intention. Compare Pahler v. Young, Mo., 232 S.W.2d 393, 395, where it was held that a deed recorded with the knowledge of the grantors was indicative of an unconditional delivery and of the grantor's intention that the instrument was to operate as an absolute conveyance rather than as a mortgage. See the there cited case of Rone v. Ward, 357 Mo. 1010, 212 S.W.2d 404, 407. See also Ratermann v. Striegel, Mo., 273 S.W.2d 304, 306 [1–6]. The relied-upon case of Frey v. Onstott, 357 Mo. 721, 210 S.W.2d 87, is not in point on its facts. The fraud practiced by the defendant there upon the grantor is not here present.

That there was no consideration for the deeds, as claimed by Victor, is not borne out by the facts, as above outlined. His obligation for attorney fees to Gossom and alimony to Pauline were paid by Julia. All of the existing debts and obligations of the parties concerning the real estate were paid by Julia from the proceeds of the $42,000 loan. That loan was procured by her as sole obligor and mortgagor. If it be true that Julia needlessly incurred expenses in bringing the partition suit and asking for a receiver, yet Victor was relieved of his personal obligation upon the prior existing $14,536.25 note to the Kruegers. Victor has not repaid Julia for funds ex-

pended for taxes, or for his personal benefit, nor has he tendered or offered to tender the same to her. Besides, as here pointed out by Julia, a voluntary conveyance of land without consideration is valid as between the parties. Such is the law. Radford v. Radford, Mo., 388 S.W.2d 33, 39 [6–9], and cases there cited. There must be other compelling circumstances besides mere lack of consideration to justify the setting aside of a deed. Rubinstein v. Rubinstein, Mo., 283 S.W.2d 603; Allan v. Allan, Mo., 364 S.W.2d 578; 26 C.J.S. Deeds § 16.

■ There is no fraud in the alleged intended violation of Julia's agreement to reconvey to Victor. In Parker v. Blakeley, 338 Mo. 1189, 93 S.W.2d 981, 990, it was said, quoting from Ferguson v. Robinson, 258 Mo. 113, 167 S.W. 447, " 'Equity does not pretend to enforce verbal agreements in the face of the statute of frauds, and the person holding the legal title to real estate will not be decreed to be a constructive trustee, unless there is something more in the transaction than the mere violation of a parol agreement. * * *' [T]he 'simple violation of a parol contract' does not give rise to a constructive trust 'for, if such was the law, the statute of frauds would be virtually repealed.' " See also the there cited cases of Long v. Conrad, Mo., 42 S.W.2d 357; Gates Hotel Co. v. C.R.H. Davis Real Estate Co., 331 Mo. 94, 52 S.W.2d 1011; and Young v. Kansas City Life Ins. Co., 329 Mo. 130, 43 S.W.2d 1046. Victor's pleading and evidence (even if considered to be true) show nothing more than a violation of Julia's oral promise to reconvey to him. That does not amount to fraud, under the foregoing cases, to justify setting aside his deeds. His right to recover is barred by the Statute of Frauds, supra.

The judgment is affirmed.

BARRETT and STOCKARD, CC., concur.

PER CURIAM:

The foregoing opinion by PRITCHARD, C., is adopted as the opinion of the Court.

All of the Judges concur.