Erlynne **ETHERIDGE**, Individually and as Administratrix of the Estate of William L. Hammer, Deceased, (Plaintiff) Appellant,

v.

Henry **HAMMER**, Executor of the Estate of Bertha Shields, Deceased, and Henry Hammer and Grace Hammer, His Wife, (Defendants) Respondents.

No. 54269.

Supreme Court of Missouri, Division No. 1.

Feb. 9, 1970.

Gershenson & Gershenson, Harry Gershenson, Harry Gershenson, Jr., St. Louis, for (plaintiff) appellant.

Bishop & Goodman, Jesse E. Bishop, Harold S. Goodman, St. Louis, for (defendants) respondents.

WELBORN, Commissioner.

Action by which plaintiff Erlynne Etheridge sought to establish an interest in real property, owned, according to the record of title, by her father, William Hammer, at the time of his death, and his sister, Bertha Shields, as joint tenants with right of survivorship.

Plaintiff Erlynne Etheridge is the daughter and sole heir of William L. Hammer. Her age does not appear, but she was married in 1937. Her father was divorced. Beginning around 1940, William Hammer and his sister, Mrs. Bertha Shields, occupied adjacent apartments in a duplex at 2901–03 Ohio Avenue in St. Louis. In 1950, Mr. Hammer was employed by a contractor in Louisiana. He sent his paychecks to Mrs. Shields who deposited them in an account at the South Side National Bank in St. Louis. In 1951, Hammer, Mrs. Shields and another sister, Mrs. Lucille Vidot, sold some property in St. Louis County which netted the sellers some $6,750. Disposition of the proceeds does not appear.

In 1953, Hammer and Mrs. Shields contracted to purchase the property here in question, a residence at 8611 Virgil Avenue in St. Louis County, for $13,500. The contract of sale, signed by both purchasers, recited that title was to be taken in the names of William Hammer and Bertha Shields "To either or survivor." The sale was closed on October 7, 1953, and a deed to William L. Hammer and Bertha Shields "as joint tenants with right of survivorship and not as tenants in common" was recorded on that date. Apparently a portion of the purchase price was supplied by a $4,500 six-month note, dated October 7, 1953, signed by Hammer and Mrs. Shields, and secured by a deed of trust on the Virgil property.

On October 26, 1953, Hammer, Mrs. Shields and Mrs. Vidot sold the 2901–03 Ohio property for $9,500, with a net of $8,958.83 to the sellers. On October 29, 1953, the $4,500 note to the South Side National Bank was paid.

Hammer and Mrs. Shields lived together in the Virgil property. Mrs. Shields did not work but had some income from social security. Hammer retired at some unspecified time and had income from social security. Hammer died June 14, 1965. He was 84 years of age.

This action was filed July 29, 1965. Mrs. Shields died after the suit was filed and her executor was substituted as a party defendant.

The basis of plaintiff's claim as stated in paragraph 4 of her petition was:

"4. Plaintiff further states that some years ago, by agreement with said defendant, Bertha Shields, the said William L. Hammer arranged that the title to the above described property was to be placed in the name of himself and defendant, or survivor, for life, with the remainder to this plaintiff upon the death of the survivor of said William L. Hammer and said defendant; that in truth and in fact the deed conveying the said real estate into the name of said William L. Hammer and said defendant was to have been so made, but through oversight, undue influence, misrepresentation and fraud, on the part of defendant, Bertha Shields, the said defendant did arrange to have the deed to be made to herself and said William L. Hammer as joint tenants, with right of survivorship; that by reason of the foregoing, on the death of said William L.

Hammer, this plaintiff has been defrauded of and denied her remainder interest in said property, and stands to lose the same to the heirs or grantees of said Bertha Shields; that defendant occupied a confidential and fiduciary relationship with said William L. Hammer."

We set out in some detail the evidence relied upon by plaintiff in support of her claim.

In 1953, when Hammer and Mrs. Shields looked at the Virgil residence before its purchase, Hammer, in the presence of Lucille Vidot and her son, Charles, who testified to the conversation, said to Mrs. Shields: "If you're interested in this house, I will buy it for you." Mrs. Shields "said she liked the house very much, liked to have it."

Again, in 1953, in front of the house, according to Charles Vidot: "Well, they were going to buy the house and there was something mentioned that whoever passed away first, it would be to the other one to live there until they passed away, and then the house was supposed to go to Erlynne."

Vidot also testified that a couple of years after the property had been purchased, he heard Hammer say to Mrs. Shields: "On the death of either one of us, the house will be left to the survivor until the survivor dies, and then the house would go to Erlynne." Mrs. Shields "agreed to that."

Mrs. Vera Vidot, wife of Charles, testified that, in 1961, she and her husband and Hammer and Mrs. Shields were in the kitchen at 8611 Virgil. "Mr. Hammer said that the property of 8611 Virgil should go to Erlynne after Mrs. Shields passed away." [Mrs. Shields] said, "Well, all right." A few months later, at the same place and in the presence of the same persons, Mr. Hammer "said that Mrs. Shields should live there, that was her home, and Erlynne should get it after she passed away." Mrs. Shields said, "it was agreeable with her."

Mrs. Vidot also testified to a similar conversation at the same situs in 1961.

In 1962, plaintiff's husband, Jack, was present at a conversation between Hammer and Mrs. Shields in which the question of a will was brought up. Mrs. Shields told Hammer a will would not be necessary. Hammer said "that as long as Bertha Shields lived she would have a roof over her head, and when she passed away that the property was to go to Erlynne, his daughter." Mrs. Shields said "that was fine with her, she had no one also, she was alone."

About a year later, Jack and his wife were called to 8611 Virgil to take Hammer to the doctor. Hammer "told us that the property was to be Erlynne's after she passed away. After Bertha Shields passed away—if she should pass away first; if not, naturally he would have the property and it would go to his daughter." Mrs. Shields "was in entire agreement with whatever he said about that property."

Both plaintiff and her husband testified that they were with Mrs. Shields at the funeral parlor after Mr. Hammer died and that Mrs. Shields said that she was going to live in the house until she died; that she knew that, after she passed on, Mrs. Etheridge's father wanted her to have the property. Mr. Etheridge testified also near the same time he and Mrs. Shields were alone and she told him that "it was Bill's desire that she have a home to live in as long as she lived and it would go to Erlynne when she passed away."

The only evidence as to the source of the purchase price of the property was found in Mrs. Shields' deposition, a portion of which plaintiff read into evidence. She stated that she and her brother shared equally in the cost of the house.

The trial court found against plaintiff, specifying in his memorandum several grounds, including the statute of frauds and the 10-year statute of limitations. § 516.010, RSMo 1959, V.A.M.S. He also

**210**

referred to the testimony offered by plaintiff as "vague references that William Hammer had made that plaintiff was to have a remainder interest in the property after the death of himself and Bertha Shields. The exact times and circumstances of these conversations were generally vague * * *.

"Certainly, plaintiff's credible evidence was not so clear, cogent and convincing as would in any event justify setting aside the deed by which the property was conveyed to William L. Hammer and Bertha Shields. While allegations were made concerning "oversight, undue influence, misrepresentation and fraud,' no evidence was offered in respect to any of these items."

■ On this appeal, the basic position of appellant is that a constructive trust in her favor exists because Bertha Shields "had agreed before and after the conveyance of the property to hold title to the property for life, with remainder to plaintiff." Plaintiff acknowledges that her burden was to prove such an agreement by cogent, clear and convincing evidence. However, the mere fact that plaintiff's evidence was uncontradicted does not produce compliance with this burden.

The only in any manner direct evidence of an agreement at the time of acquisition of the property is the testimony of Charles Vidot: "Well, they were going to buy the house and there was something mentioned that whoever passed away first, it would be to the other one to live there until they passed away, and then the house was supposed to go to Erlynne."

■ Even if this testimony should be considered as evidencing an agreement, the agreement, standing alone, would not result in a constructive trust. As was said in Schultz v. Curson, Mo.Sup., 421 S.W.2d 205, 213:

"There is no fraud in the alleged intended violation of Julia's agreement to reconvey to Victor. In Parker v. Blakeley,

338 Mo. 1189, 93 S.W.2d 981, 990, it was said, quoting from Ferguson v. Robinson, 258 Mo. 113, 167 S.W. 447, ' "Equity does not pretend to enforce verbal agreements in the face of the statute of frauds, and the person holding the legal title to real estate will not be decreed to be a constructive trustee, unless there is something more in the transaction than the mere violation of a parol agreement. * * *" [T]he "simple violation of a parol contract" does not give rise to a constructive trust "for, if such was the law, the statute of frauds would be virtually repealed." ' See also the there cited cases of Long v. Conrad, Mo., 42 S.W.2d 357; Gates Hotel Co. v. C. R. H. Davis Real Estate Co., 331 Mo. 94, 52 S.W.2d 1011; and Young v. Kansas City Life Ins. Co., 329 Mo. 130, 43 S.W.2d 1046."

See also Purvis v. Hardin, 343 Mo. 652, 122 S.W.2d 936, 939[6].

The rule here applicable is stated in § 183 of the Restatement of Restitution, pp. 737–738, as follows:

"Where the owner of an interest in land transfers it inter vivos to another upon an oral trust in favor of a third person or upon an oral agreement to convey the land to a third person, and the trust or agreement is unenforceable because of the Statute of Frauds, and the transferee refuses to perform the trust or agreement, he holds the interest upon a constructive trust for the third person, if, but only if,

"(a) the transferee by fraud, duress or undue influence induced the transferor not to create an enforceable interest in the third person, or

"(b) the transferee at the time of the transfer was in a confidential relation to the transferor, or

"(c) the transfer was made by the transferor in contemplation of death."

■ As the Restatement points out, the wrongful inducement by the transferee is essential to produce a constructive trust.

In this case, there is no evidence, either direct or circumstantial, that the title upon the purchase of the property was placed in the joint names of Hammer and Mrs. Shields because of Mrs. Shields' wrongful inducement. On the other hand, the evidence did show ownership by Hammer of other property jointly with his sisters, including Mrs. Shields. There was, thus nothing novel or unusual about the arrangement in this case which would justify an inference that Hammer had been wrongfully prevailed upon by Mrs. Shields. Although both Mr. Hammer and Mrs. Shields might have had some wishes, at the time, about the ultimate disposition of the property, favorable to Erlynne, there were valid reasons for not making Erlynne a remainderman in the deed. Specifically, Hammer and Mrs. Shields may well have wanted to retain control of the property, with the right to dispose of it should necessity or other occasion make it desirable to do so.

Appellant failed to produce cogent and convincing evidence that any representation on the part of Mrs. Shields induced the omission of an interest in plaintiff from the original transfer. Therefore, there would be no basis for finding that Mrs. Shields, by fraud, duress or undue influence induced Mr. Hammer not to create an enforceable interest in plaintiff.

Appellant's argument of a constructive trust is based, in part, upon the assumption that Hammer provided the purchase price for the property. There is, however, no evidence that he did so. The only direct evidence on the question is Mrs. Shields' statement in her deposition, placed in evidence by plaintiff, that she contributed equally with her brother to the purchase price.

■ Appellant has shown no evidence of a confidential relationship between Hammer and Mrs. Shields. The only evidence, other than the family relationship, is that, in 1950, while Hammer was working in Louisiana, he sent his paychecks to Mrs. Shields who deposited them in the South Side National Bank. However, that fact alone would not establish a confidential relationship. There was no evidence that Mrs. Shields had any control of the money after it was deposited, and there is no evidence of any continuation of such an arrangement at the time of the purchase of the property on Virgil. Certainly there was no evidence that Mr. Hammer was accustomed to being guided by Mrs. Shields in business matters.

The plaintiff simply failed to produce the clear, cogent and convincing evidence essential for the proof of a constructive trust.

The declarations of Hammer and Mrs. Shields subsequent to the acquisition of the property were ineffective, because of the statute of frauds, to establish an interest in the property in plaintiff. At best, the testimony would show some sort of vague intention about the ultimate disposition of the property. However, no evidence of any effort to take the steps necessary to effectuate such intention was produced. This is no case for the disregard of the statute of frauds in order to prevent the perpetration of a fraud.

Our review convinces us that the judgment below was for the right party.

Judgment affirmed.

HOUSER and HIGGINS, CC., concur.

PER CURIAM.

The foregoing opinion by WELBORN, C., is adopted as the opinion of the Court.

SEILER, P. J., HOLMAN, J., and HENLEY, Alternate Judge, concur.

STORCKMAN, J., not sitting.