In the ESTATE of Ollie Edith SHEETS, Jo Ann Griffin and Carolyn Kittleson, Plaintiffs-Respondents,

v.

Martin E. SHEETS, Jr., Defendant-Appellant.

No. 37889.

Missouri Court of Appeals, St. Louis District, Division Two.

Sept. 20, 1977.

Motion for Rehearing and/or Transfer Denied Nov. 14, 1977.

Steiner & Fenlon, Joseph A. Fenlon, Jr., St. Louis, for defendant-appellant.

Richard M. Marshall, Clayton, Phillip M. Sestric, St. Louis, Patrick Fiandaca, Pub. Adm., Clayton, for plaintiffs-respondents.

REINHARD, Judge.

This is an appeal by Martin E. Sheets, Jr. from a decree declaring title to a certificate of deposit and a savings passbook to be in respondents Jo Ann Griffin and Carolyn Kittleson, respectively. The certificate of deposit was issued by United States Postal Savings Association on February 6, 1974, in the amount of $20,000.00, to Edith Sheets and Jo Ann Griffin, as joint tenants with right of survivorship. The passbook savings account, in an amount in excess of $20,000.00, originally was established as an individual account by Edith Sheets and then changed to a joint account on September 19, 1973, in the names of Edith Sheets and Carolyn Kittleson, as joint tenants with right of survivorship. Based upon the standard of review in a court-tried case established in *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976), we affirm.

Edith Sheets died on January 25, 1975. Martin Sheets, Jr., as executor of her will, discovered the certificate and passbook while conducting a will search and subsequently delivered same to the administrator pendente lite. Thereafter, respondents petitioned the probate court, seeking a declaration of title to said property. From a ruling in favor of respondents, Martin

Sheets, Jr. appealed to the circuit court. In his amended answer appellant claimed that the title to the funds in the separate joint accounts belonged to the descendants of his father, Dr. Martin Sheets, based on a theory of constructive trust. What follows is a summary of the evidence pertinent to appellant's claim.

In 1942, Dr. Martin E. Sheets, a widower, and Miss Ollie Edith Ellis, Dr. Sheets' housekeeper and then a recent divorcee, were married. No children were born of the marriage. Dr. Sheets died on September 17, 1970, and was survived by his wife, Edith, his son by the previous marriage, Martin E. Sheets, Jr., and the children of Dr. Sheets' deceased daughter, Lowell Frei and Doris McMenamy. Respondents Jo Ann Griffin and Carolyn Kittleson are nieces of Edith Sheets.

Martin Sheets, Jr.[1] testified that, while his father was alive, he assisted Edith and Dr. Sheets with their financial affairs and property investments. On numerous occasions, Sheets testified, the doctor and Edith spoke with appellant concerning the couple's agreement, reached after they were married, to dispose of their property. To quote appellant: "The agreement was that the estate which he acquired while he and my mother were married, that was to go to my father's family [at his death], and the estate he acquired after he married Edith, after his death it would go to Edith, and after her death it would go back to my father's family."

Appellant stated his belief that Edith was aware of what property the doctor acquired before and after their marriage since Edith "took care of the books" for the doctor. He was uncertain as to when, during their years together, the doctor and Edith first agreed upon the disposition of their property, nor was he aware of the circumstances surrounding the agreement, or whether Edith received money or other property as consideration for her consent to the arrangement.

While appellant testified that the funds in the two savings accounts came from his father, no evidence was presented tracing the funds from his father to the accounts. Sheets admitted that he did not know what property Edith owned before her marriage, what property she acquired independent of his father after the marriage, or what, if any, insurance benefits she received upon his death.

The deposition of Dr. Robert D. Brookes, a psychiatrist who treated Edith Sheets for a mental condition from October, 1966, until her death in 1975, was admitted in evidence. In Dr. Brookes' opinion, Edith was capable of managing her financial affairs and was not prone to being easily influenced despite her mental problem, described as manic-depressive illness. On one occasion in 1969, Edith informed Dr. Brookes of plans to move to New Mexico with Dr. Sheets, and of the fact that they had made a settlement with Martin, Jr. by which the latter would receive the property he otherwise would acquire upon Edith's death.

On another occasion in 1971, a year following her husband's death, Edith explained to Dr. Brookes her decision to make a new will giving to Martin, Jr. the property she acquired from Dr. Sheets. At the time, Edith was experiencing depression and believed her relatives were seeking to take advantage of her.

The evidence shows that Dr. Sheets and Edith Sheets executed several documents

1. Counsel for respondents objected to the testimony of Martin Sheets, Jr. regarding the alleged oral agreement between Dr. and Mrs. Sheets, contending it was hearsay. The trial court withheld its ruling on admissibility of this evidence until it rendered judgment in the case. Declaring the evidence inadmissible as hearsay, the court nevertheless considered the evidence in reaching the conclusion that there was insufficient proof of a valid post-nuptial agreement.

While we agree the evidence constitutes hearsay, appellant's testimony as to statements by Edith Sheets and Dr. Sheets in her presence, in which she acquiesced, concerning the alleged agreement, constitute admissions against interest by Edith and fall within a recognized exception to the hearsay rule. *Hood v. Heppler,* 503 S.W.2d 452 (Mo.App.1973); *Carpenter v. Davis,* 435 S.W.2d 382, 384 (Mo. banc 1968); 4 Wigmore, Evidence, §§ 1049, 1076, 1081 (Chadbourn rev. 1972).

involving disposition of their property. On October 19, 1969, Dr. and Mrs. Sheets executed a written trust instrument conveying to Martin Sheets, Jr. and his wife a one-half interest in designated real property, and conveying the remaining one-half interest to Martin Sheets, Jr. as trustee for the benefit of Lowell Frei and Doris McMenamy. According to Martin Sheets, Jr., this property was acquired by Dr. Sheets prior to his marriage to Edith. Approximately one month later, on November 18, 1969, Edith Sheets executed her last will and testament by which the bulk of her estate would pass to certain relatives on her side of the family, including her nieces, Jo Ann Griffin and Carolyn Kittleson. Subsequently, on March 5, 1970, Dr. Sheets executed his last will and testament by which he devised the bulk of his estate to his wife, Edith Sheets. Article IV of the will states: "Whereas I have previously hereto made provision for Martin Sheets, Jr., Lowell Lee Frei and Doris McMenamy by means of certain deeds delivered and duly recorded in the City and County of St. Louis, I intentionally make no further provision herein for any of said persons."

Sometime prior to 1969 Dr. Sheets received approximately $30,000.00 from the sale of an apartment building in University City. $24,000.00 of this amount was distributed to Martin Sheets, Jr., Lowell Frei and Doris McMenamy. We note that in his testimony, appellant identified receipt of the proceeds of this sale and the trust instrument as evidence of partial performance of the alleged agreement between Dr. and Mrs. Sheets.

Within two months of Dr. Sheets' death in September, 1970, appellant, a lawyer, prepared a new will for Mrs. Sheets. By the terms of her second will, Edith Sheets devised her property to appellant, Martin E. Sheets, Jr., Lowell Frei and Doris McMenamy. In addition, the following land transactions occurred subsequent to Dr. Sheets' death. By general warranty deed dated October 31, 1972, St. Mark United Presbyterian Church conveyed to Edith Sheets and Daniel M. Sheets, the son of appellant, as joint tenants with right of survivorship, certain property in Ballwin, Missouri. By general warranty deed dated June 16, 1971, Edith Sheets conveyed to herself, appellant, and his wife, Mary Ann, as joint tenants with right of survivorship, designated property on Northwood and DeMun Avenues.

Based on the aforegoing evidence, appellant argues that creation of the separate joint accounts breached the oral agreement between Dr. and Mrs. Sheets and that the funds therefore should be impressed with a constructive trust enforceable against respondents and for the benefit of appellant and his niece and nephew. The trial court rejected appellant's view and held that title to the savings account was vested in Carolyn Kittleson, subject to a $2,828.02 lien in favor of the administrator pendente lite, and that title to the certificate of deposit was vested in Jo Ann Griffin, subject to a $2,827.97 lien in favor of the administrator pendente lite.

The law governing creation and effect of joint tenancy accounts such as these is specific and unqualified. Section 369.174(1), RSMo.1971 Supp., provides:

"When a savings account is opened or maintained in an association in the names of two or more persons, whether minor or adults, as joint tenants or in form to be paid to any of them or the survivors of them and whether or not the names are stated in the conjunctive or the disjunctive or otherwise, the savings account and all additions thereto shall be the property of such persons as joint tenants. * * * The opening or maintenance of the account in such form, in the absence of fraud or undue influence, shall be conclusive evidence in any action or proceeding to which either the association or any survivor is a party of the intention of all the parties to the account to vest title to the account and the additions and earnings thereto in the survivor."

If in this case joint tenancies were created in compliance with the statute, in the absence of fraud or undue influence, respondents Kittleson and Griffin, as the survivors, became the owners of the accounts.

*See Matter of Estate of Parker,* 536 S.W.2d 25 (Mo. banc 1976); *In re Estate of La-Garce,* 487 S.W.2d 493 (Mo. banc 1972).

■ There is no question but that the accounts complied with the statutory form since both signature cards displayed the words "as joint tenants with right of survivorship and not as tenants in common." Furthermore, appellant Sheets admitted in his pleadings that the joint accounts were created in the names of Edith Sheets and respondents Griffin and Kittleson. This constituted a judicial admission and obviated any requirement of proof of authenticity of the signatures appearing on the signature cards creating the accounts. *Wehrli v. Wabash Railroad Co.,* 315 S.W.2d 765, 773–4 (Mo.1958).

Appellant contends, however, that the admission is not conclusive in the light of testimony that there were differences in the signatures appearing on two of the cards and the testimony of one witness that, in his opinion, the same person did not sign the name "Edith Sheets" on the cards. However, apart from the judicial admission, there was considerable evidence upon which the trial court could base a determination that both signature cards were signed by Edith Sheets. We reject appellant's contention on this point.

Because the evidence of compliance with § 369.174 is clear, the joint accounts are to be given their proper effect under the statute, and title to the accounts should be declared in respondents unless appellant proves facts constituting fraud within the purview of § 369.174, and sufficient to give rise to a constructive trust. We therefore turn to appellant's principal contention that the trial court erred in failing to find a constructive trust with respect to the funds deposited in the joint accounts.

"[A] constructive trust is the method or formula used by a court of equity as a means of effecting restitution or of rectifying a situation where, as a result of the violation of confidence or faith reposed in another, or fraudulent act or conduct of such other, the [party], who seeks the aid of equity, has been wrongfully deprived of, or

has lost, some title, * * * in the property which, otherwise and but for such fraudulent or wrongful act or conduct, he would have had." *Suhre v. Busch,* 343 Mo. 679, 123 S.W.2d 8, 15 (1938).

■ Availability of the remedy of constructive trust derives from proof of fraud, whether it be actual or constructive. Appellant neither alleged nor proved actual fraud. In the absence of actual fraud, Missouri courts will find constructive fraud and impress a constructive trust under circumstances resembling those allegedly present in this case. Neither an agreement to transfer to a third person nor the violation of said agreement, standing alone, gives rise to a constructive trust. *Etheridge v. Hammer,* 450 S.W.2d 207, 210 (Mo.1970). When one person transfers property to a second person who stands in a confidential relationship with the transferor, relying upon the transferee's oral agreement to transfer to a third person, and the transferee subsequently transfers to a fourth person and thereby fails to perform in accordance with the agreement, such failure may constitute constructive fraud, in which case the fourth person may be said to hold the property, as a "trustee ex maleficio", upon constructive trust for the third person. *Strype v. Lewis,* 352 Mo. 1004, 180 S.W.2d 688, 691 (1944); *Swon v. Huddleston,* 282 S.W.2d 18, 25–26 (Mo.1955); Restatement, Restitution, § 183, pp. 737–38, § 186, p. 757; *Coffey v. Coffey,* 485 S.W.2d 167, 174 (Mo. App.1972); *Mahler v. Tieman,* 550 S.W.2d 623 (Mo.App.1977). A constructive trust will be impressed whether the property remains in specie or has been converted to another form, if it can be traced, and if in the hands of a third party, unless it passes to a bona fide purchaser for value and without notice. 89 C.J.S. Trusts § 146, pp. 1033–34.

The definition of confidential relationship includes not only those relationships technically fiduciary—such as attorney and client, principal and agent—but extends to other instances wherein special confidence exists. *Service Life Insurance Co. of Fort Worth v. Davis,* 466 S.W.2d 190, 196 (Mo.App.1971).

It has been said that no more confidential relationship is known to the law than that of husband and wife. *Linders v. Linders,* 356 Mo. 852, 204 S.W.2d 229, 232 (1947).

█ In seeking the creation of a constructive trust, appellant carries a great burden. An extraordinary degree of proof is required; the proof must be so clear, cogent and convincing as to exclude all reasonable doubt from the mind of the chancellor. *Service Life Insurance Co. of Fort Worth v. Davis, supra* at 197; cf. *Skidmore v. Back,* 512 S.W.2d 223, 230 (Mo. App.1974). In this case, appellant's proof must consist of clear, cogent and convincing evidence: 1) of a confidential relationship between Dr. Sheets and Edith, a fact which may be inferred from the marriage relationship itself; 2) of an agreement between Dr. Sheets and Edith that property Dr. Sheets obtained during their marriage would be transferred to his family upon her death, and his reliance thereon; 3) of a breach of that agreement by Edith's establishing the joint accounts; and 4) tracing property of Dr. Sheets to the funds in the joint accounts.

█ Evidence of an agreement was grounded almost entirely on the testimony of appellant. The testimony of Dr. Brookes, while making general reference to an agreement or arrangement involving Dr. Sheets' property, was unspecific as to the alleged terms of the agreement. In this regard, the court, sitting as the trier of the facts, has leave to disbelieve all of the testimony of any witness, *Southwestern Bell Tel. Co. v. Crown Insurance Co.,* 416 S.W.2d 705, 711 (Mo.App.1967); *Edmonds v. Stratton,* 457 S.W.2d 228, 234 (Mo.App.1970), or to believe part of a witness' testimony and reject the rest, *North Side Finance Co. v. Sparr,* 78 S.W.2d 892, 894 (Mo.App.1935). Moreover, appellant's evidence can be uncontradicted and still not satisfy his burden of proof. *Etheridge v. Hammer, supra.* In addition to the above, we attach some significance to that part of Dr. Sheets' will expressing his intention to make no further provision for appellant, Martin Sheets, Jr., Lowell Frei and Doris McMenamy beyond certain property dispositions which had occurred prior to the time of execution of the will, a statement which belies any further obligation of Edith to ensure a particular disposition of the doctor's property upon her death.

Since appellant had the burden of producing clear, cogent and convincing evidence necessary for the establishment of a constructive trust, we agree with the trial court and hereby affirm its decision.

McMILLIAN, P. J., and STEWART, J., concur. .