Ronald L. TURNER,
Plaintiff-Cross-Appellant,

v.

Robert KAPLAN, Allan Hoffman, Woodson Holding Company, Inc., and HKT Holding Company, Inc., Defendants-Cross-Appellants.

No. 40474.

Missouri Court of Appeals,
Eastern District,
Division One.

May 13, 1980.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 18, 1980.

Sumner, Hanlon, Sumner, MacDonald & Nouss, P. C., Donald R. Carmody, Mark A. Brown, John E. Hilton, Clayton, for plaintiff-cross-appellant.

Susman, Stern, Heifetz, Lurie, Sheehan, Popkin & Chervitz, Alan E. Popkin, Lisa G. Muney, Clayton, for defendants-cross-appellants.

PUDLOWSKI, Judge.

This suit was filed by plaintiff against Robert Kaplan, Allan Hoffman, Commercial Equities Company, Woodson Holding Co., Woodson Construction Co., and Woodson Development Co., defendants.

Prior to 1973, defendants Hoffman and Kaplan were engaged in a real estate partnership under the name of H & K Investment Company. In the fall of 1972, the defendants met the plaintiff and began negotiations to form a real estate partnership with him. Plaintiff drafted a partnership agreement which he thought was acceptable to all concerned. However, according to plaintiff's testimony, one of the defendants, Hoffman, did not agree to certain terms.

Although the parties, Turner, Kaplan and Hoffman, never reduced their agreement to writing, they became partners beginning in 1973. The evidence indisputably showed the parties agree: (1) plaintiff was to receive 25% of the gross receipts on real estate commissions the partnership earned; (2) defendants Kaplan and Hoffman were to bear the overhead and divide the profit equally; (3) plaintiff was to have $900 per month draw, and (4) the defendants, Kaplan and Hoffman, were free to compete with the partnership.

Business did not go well at first. Plaintiff did not generate much business for the partnership and was overdrawn on his account. Despite the poor business record of the partnership, the parties decided in the summer of 1973, to expand the scope of their business to include real estate develop-

ment. The partners modified their oral agreement to give plaintiff a one-quarter equity interest in all properties developed by the partnership.

The parties conducted business during 1973 and 1974 according to an oral understanding. However, plaintiff was not satisfied with the oral understanding and pressed for a written contract. The parties contacted an attorney who drew up a contract of partnership.

In 1975, approximately two and one-half years after the parties began business, bank accounts and books were finally established. The partners were very lax in bookkeeping and segregating assets. Prior to this time the records of the partnership were kept on the books of approximately five businesses, all but one controlled by the defendants.

Plaintiff decided to leave the partnership in late 1975. Although plaintiff left, the defendants continued the business. Eventually various disputes arose between plaintiff and defendants, and plaintiff brought suit for an accounting. The case was tried to a master. All parties appealed and for clarity they will be referred to as designated at trial.

Defendants contend the trial court erred in adopting the finding of the master that exhibit 4, the agreement drawn by the partners' attorney, was not the agreement of the parties. The defendants maintain the parties intended exhibit 4 to be their contract and understood it to be their contract even though it was not signed. They argue that plaintiff failed to adduce any evidence that the parties did not intend the formation of a contract until exhibit 4 was signed and that, assuming arguendo, if the evidence did clearly show the parties did not intend exhibit 4 to be effective until signed, plaintiff, having reaped the benefits of the contract, is estopped from denying its validity.

Under Rule 73.01 the appellate court must sustain the decree or judgment of the court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously ap-

plies the law. Appellate courts are to exercise the power to set aside a decree or judgment on the ground it is against the weight of the evidence with caution and with a firm belief that the decree or judgment is wrong. *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976).

The evidence concerning exhibit 4 was disputed. Plaintiff testified the defendants objected to those provisions in the second draft of the partnership agreement concerning liquidation of the partnership assets and those provisions regarding the partnership succession. Plaintiff testified that he agreed with the defendants that changes would have to be made. Plaintiff also testified that those provisions were not changed to the satisfaction of the parties in the third and final draft, i. e., exhibit 4, and that none of the parties ever agreed to all the provisions of that exhibit.

■ The question of whether exhibit 4 is the agreement of the parties turns on who is to be believed. The trial court in accepting the master's findings concluded that the evidence of the plaintiff was more believable than the defendants. The finding is not against the weight of the evidence.

■ Contrary to defendants' assertions, plaintiff, having proved that exhibit 4 was not the contract of the parties, did not have to prove the parties did not intend the formation of the contract until exhibit 4 was signed. The conduct of the parties establishes they did in fact have a contract before exhibit 4 was drawn up. It was the integration of this contract into a writing which proved troublesome to the parties. Since plaintiff did not reap the benefits of this supposed contract, he is not estopped from denying its validity.

The defendants also contend the trial court erred by adopting the finding of the master that the value of Florissant Oaks Shopping Center, an asset of the partnership, was $1,060,000. Defendants maintained the master relied on incompetent evidence.

Plaintiff called Arthur Schneider, an M.A.I., as an expert witness to testify as to the value of Florissant Oaks. On direct examination Mr. Schneider testified that the value of the property was $1,243,000. On cross examination Mr. Schneider admitted his appraisal was unreliable. Several months later plaintiff called Mr. Schneider back and elicited his opinion as to the value of Florissant Oaks again. This time his opinion was that the property was worth $1,168,700. Once again experienced defense counsel vigorously cross-examined Mr. Schneider and at the end of that cross-examination the following colloquy took place:

Q. What I'm asking is, taking into consideration that you didn't consider the various things you and I have just been discussing, and I have been questioning you about, is the opinion you have expressed as to value, fair market value of the Florissant Oaks Shopping Center as of December 31, 1975, something that you could rely upon and feel accurately states what the value was on that date?

A. I'll hedge on that Mr. Popkin by saying to you it is the best opinion I could render.

Q. I understand that is the best you could do. But I want to know, is it something that, in your opinion as a professional appraiser, is reliable and really accurately states what the fair market value was as of December 31, 1975?

A. I wouldn't be able to say it would accurately state it, because there were some loose ends I don't know about. So you are in a gray area as to how accurate.

Q. Do you feel it's not terribly accurate?

A. Maybe I can try to clarify it. It is not the way I would like to appraise it, and I don't have enough data available to permit me to do the type of appraisal I would have like to have done.

Q. And as I understand it, its not really the type of accurate appraisal you usually do?

A. No, sir.

Q. In your opinion, it doesn't really accurately state the fair market value, what the willing buyer would have paid, and what the willing seller would have sold for as of December 31, 1975.

A. Yes, you'd have to more or less say that. Under that terminology, I don't know any other way I could put it.

The weight and credibility to be given to opinion evidence as to the value of property is for the trier of facts to determine. *Carnell v. Dairyman's Supply Company*, 421 S.W.2d 775 (Mo.1967). The probative value of an opinion depends upon the facts on which the opinion is based, but an opinion based upon improper elements or improper foundation is incompetent evidence. *Shelby County R–4 School District v. Herman*, 392 S.W.2d 609 (Mo.1965). An opinion based on mere guess, conjecture, or speculation has no probative force. *Galovich v. Hertz Corporation*, 513 S.W.2d 325 (Mo.1974). The effect of inconsistencies in the testimony of a witness or his lack of knowledge as to certain facts goes to the weight of the testimony or the credibility of the witness. *Lange v. Kansas City Southern Railway Company*, 290 S.W.2d 71 (Mo. 1956); *Mississippi River Fuel Corporation v. Whitener*, 237 S.W.2d 239 (Mo.1951).

The fair import of Mr. Schneider's testimony is that he had not taken into account certain factors in determining the value of the Florissant Oaks Shopping Center and that because he had not taken into account those factors, his opinion of the fair market value of the property as of December 31, 1975, was not as accurate as it would have been had he taken into account those factors. This went to the weight of his testimony. And in his finding of fact, the master concluded "the income analysis used by Mr. Schneider cannot be entirely accepted." The weight to be given Mr. Schneider's testimony was for the trier of facts to determine. There is no error.

Plaintiff claims the trial court erred by not recognizing plaintiff's right to post-dissolution profits that were the result of certain real estate and construction ventures commenced by the partnership after December 31, 1975.

In Missouri, on dissolution the partnership is not terminated but continues until the winding up of the partnership affairs is completed. § 358.300 RSMo (1978). After dissolution a retiring partner has an election. He may force a liquidation of the partnership, taking the value of his interest in the partnership, or he may permit the business to continue and claim as a creditor, albeit a subordinate to outside creditors, the value of his interest at dissolution. *Smith v. Kenneback*, 502 S.W.2d 290 (Mo.1973). If the retiring partner makes the latter election, he may elect to share in the post-dissolution profits and losses or collect interest from the date of dissolution. § 358.420 RSMo (1978).

Plaintiff argues that certain real estate and construction ventures commenced after December 31, 1975, were partnership ventures. Yet plaintiff admits that his partners, by the terms of the partnership agreement, had the right to compete with the partnership and did in fact do so during the time the parties were partners. Simply because plaintiff's partners entered into transactions after dissolution of the type in which the partnership engaged does not make those transactions partnership transactions. Plaintiff failed to show what partnership assets were used to pay for and finance those transactions which the trial court concluded were not partnership transactions.

Plaintiff has failed to demonstrate that the findings of the master and accepted by the trial court are not supported by substantial evidence or are against the weight of the evidence or that the trial court misconstrued the law or misapplied the law. Therefore this court finds no error.

Plaintiff's final contention is that the trial court erred in finding defendants were entitled to one-half of the commissions collected by plaintiff. After plaintiff withdrew from the partnership on December 31, 1975, he entered into a contract with his former partners whereby he was to receive one-half of any commissions his former partners earned on real estate developments with Kentucky Fried Chicken during 1976, and they were to receive one-half of the commissions he earned on real estate developments with Kentucky Fried Chicken during the same calendar year. The contract was entered into on February 24, 1976. During 1975, the defendants negotiated a deal with Kentucky Fried Chicken, but the deal was not closed until January of 1976. The defendants earned $8,000 in commissions on this real estate transaction and refused to remit one-half to plaintiff because the deal was closed prior to February 24, 1976, the date the contract was signed. Plaintiff declared he was no longer bound by the contract and refused to pay defendants any monies on commissions he earned ($46,000) on real estate sales to Kentucky Fried Chicken during the calendar year 1976. The master concluded that because defendants materially breached the contract, plaintiff was no longer bound by it. The trial court did not adopt the finding of the master but modified the master's finding and ordered the plaintiff to pay defendants $19,000. The trial court's action is in accordance with Rule 68.01(g), (d). We find no error

The judgment is affirmed.

SNYDER, P. J., and WEIER, J., concur.