I would affirm the ruling of the Circuit Court.

**D. S., by her Next Friend,**
**Plaintiff-Appellant,**

v.

**H. T. H., Administrator,**
**Defendant-Respondent,**

and

**M. H. et al., Intervenors-Respondents.**

No. 11232.

Missouri Court of Appeals,
Southern District,
Division Four.

June 9, 1980.

L. Joe Scott, L. Joe Scott, Daniel T. Moore, Poplar Bluff, for plaintiff-appellant.

Harold L. Henry, Henry, Henry & Henry, West Plains, for intervenors-respondents.

MAUS, Judge.

In her petition for declaratory judgment against the administrator of the estate of J. O. W., deceased, the plaintiff in Count I sought a determination that she was the illegitimate daughter of the deceased, and in Count II a determination that she was the equitably adopted daughter of the deceased. The defendant administrator entered a general denial of each count. Those alleging themselves to be the heirs at law and distributees of his estate were permitted to intervene and also entered a general denial of each count. After a jury-waived trial the circuit court found the plaintiff failed to prove she was either a natural child or an equitably adopted child of the decedent and entered judgment in favor of the administrator and intervenors. The plaintiff appeals from the judgment on Count I, having abandoned Count II on appeal.

■ The appellant's principal point on appeal is that the determination and finding by the circuit court is against the weight of the evidence. To support that argument the appellant asserts that the judgment of the trial court cannot be sustained by reason of a presumption of legitimacy. That presumption has a long and varied history which need not be reviewed. The strength and applicability of that presumption to this proceeding has been clearly defined by our Supreme Court as follows:

> We are presented in this case with the ancient presumption that a child born in wedlock is presumed to be legitimate, which defendant is asserting for his own purposes rather than those of the child. At common law the presumption was conclusive and therefore a rule of substantive law. Today the presumption is rebuttable, an evidentiary presumption, and is overcome by a showing of substantial evidence ('clear, cogent and convincing proof') to the contrary. . . . Upon presentation by the party against whom the presumption operates of substantial evidence to rebut the presumption, the existence or nonexistence of the fact once presumed is to be determined from the evidence as if no presumption had ever been operative in the case. *In re L——*, 499 S.W.2d 490, 492 (Mo.banc 1973).

However, even if the presumption of legitimacy is rebutted, that is not decisive of the case. A plaintiff asserting illegitimacy bears the burden of proof on that issue. *Jackson v. Phalen*, 237 Mo. 142, 140 S.W. 879 (1911); *Stegemann v. Fauk*, 571 S.W.2d 697 (Mo.App.1978).

The appellant's principal point requires consideration of the evidence which may be summarized as follows. The mother and presumptive father were married in 1955. They had two children before the plaintiff was born on May 27, 1960. They lived together from the date of their marriage until about eight months before their divorce in 1969. However, the mother testified that after August, 1958, she never had sexual relations with her husband, the presumptive father. She further testified that she first met the decedent on September 18, 1958, when he took her to the doctor. They were apparently accompanied by the husband, but, as she said, "we sent [him] over to the cafe to get some hamburgers, and me and him drove over to the cemetery." They had sexual relations that day. Thereafter,

she had sexual relations with no one but the decedent and their relations continued until his death in 1977. She added that the decedent was "tickled" when he found out he was to have a child, that he later told the appellant she was his child, and that someday she would go by his name. She told the husband the decedent was the father of the appellant. She further testified that the decedent took her to the doctor for the appellant's birth, paid the expenses of that birth, and thereafter contributed to the support of the child, although she later admitted that contributions from the decedent were for the entire family.

In addition, the appellant produced evidence the decedent loved her, on two occasions referred to her as "that girl of mine", occasionally gave her money, that she and the decedent were seen together frequently and that on occasion she called him daddy. She also produced a letter to her from the decedent signed "Dad". The mother denied talking with her husband's attorney about the divorce, about the children, appellant and her sisters, and said she just went to his office and signed the papers, which she didn't read.

On the other hand, the evidence developed that the decedent was fond of all three daughters and was particularly fond of a granddaughter; that he was often seen with the daughters and the granddaughter; and the decedent also gave money to the two sisters who also called him daddy. The mother admitted that she drew public assistance by reason of the appellant and signed the application listing the husband as the appellant's father, and that she drew social security as a result of the husband being the appellant's father. She further acknowledged that the husband made and she accepted child support payments for the appellant. The decedent was single the last ten years of his life, but she never lived with him. The petition and decree pertaining to the divorce of the husband and mother, each reciting the husband was the father of the appellant, were admitted in evidence. The related property settlement agreement, which also referred to the appellant as the child of the parties, was signed by the mother and likewise admitted. The attorney who prepared these instruments stated that, contrary to the mother's testimony, he did discuss the divorce with her. Concerning whether or not there was any discussion of the fact the appellant was not the husband's child, he replied: "There never was, never was any discussion of that at all, except the discussion that she was, and that she was included in this with their acquiescence."

The appellant asks this court to review the case de novo and upon that review determine the finding of the trial court was against the weight of the evidence. It is not the function of this court to review a court tried case de novo. The scope of such appellate review has been clearly defined and this court is "to set aside a decree or judgment on the ground that it is 'against the weight of the evidence' with caution and with a firm belief that the decree or judgment is wrong." *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo.banc 1976). That review is to be had with "due regard being given to the trial court's unique capacity to judge the candor or sincerity of the witnesses", *Gillespie v. Gillespie*, 590 S.W.2d 420, 421 (Mo.App.1979), and with recognition the trial court "sitting as the trier of the facts, has leave to disbelieve all of the testimony of any witness . . . or to believe part of a witness' testimony and reject the rest." *Estate of Sheets v. Sheets*, 558 S.W.2d 291, 296 (Mo.App.1977).

The argument of the appellant does not center upon such evidence as the fact the decedent was fond of and was seen with the appellant, as well as her two sisters and the granddaughter. Nor upon evidence that the appellant as well as her two sisters called the decedent daddy. The trial court could well have regarded this evidence as not indicative of paternity. The primary basis of the appellant's argument is that the testimony of the mother concerning her sexual activity is not contradicted and therefore the finding of the trial court is against the weight of the evidence. "However, counsel for plaintiffs-appellants

have overlooked the axiom that in a court-tried case the trial judge is the arbiter of the facts and may disbelieve and reject any portion of the oral testimony, even though the rejected portion is uncontradicted." *Gover v. Empire Bank*, 574 S.W.2d 464, 469 (Mo.App.1978). Also see *Dambach v. James*, 587 S.W.2d 640 (Mo.App.1979); *Intertherm, Inc. v. Coronet Imperial Corp.*, 558 S.W.2d 344 (Mo.App.1977). The trial court could have rejected this testimony on the basis of its inherent improbability and the demeanor of the witness. However, while that testimony was not directly controverted as to the sexual activities, it was otherwise controverted. It was controverted by the mother's declarations concerning paternity in drawing public assistance and social security. It was controverted by her act in signing the property settlement agreement reciting the husband's paternity of the child. The whole of that testimony could have been found to have been impeached by the false testimony in regard to the discussion with the attorney involved in the divorce. There was more than an adequate basis for the trial court to reject the testimony of the mother concerning paternity. *David v. Cindy*, 565 S.W.2d 803 (Mo.App.1978); *Corzine v. Stoff*, 505 S.W.2d 162 (Mo.App.1974).

The appellant also complains the trial court erred in admitting a holographic will of the decedent in which he attempted to devise a major part of his estate to the mother. It is not necessary to determine that it was admissible to establish a state of mind for even if erroneous, its admission is not grounds for reversal. The same is true of the admission of a newspaper article concerning the decedent's death which recited his survivors included two nieces. *Smead v. Allen*, 581 S.W.2d 93 (Mo.App. 1979).

Considering the unique capacity of the trial court to judge the candor or sincerity of the witnesses with due regard to the right of the trial court to accept or reject oral testimony, this court cannot reach a firm belief that the judgment of the trial court was wrong. The judgment is affirmed.

FLANIGAN, C. J., HOUSER, Senior Judge, and GREENE and PREWITT, JJ., concur.