Glen HARRISON, Jr., Plaintiff-Appellant,

v.

Ralph MOUSER, Sheriff of Stoddard County, Missouri, Defendant-Respondent.

No. 12942.

Missouri Court of Appeals, Southern District, Division Three.

May 19, 1983.

H. Max Hilfiker, Malden, for plaintiff-appellant.

Donald Rhodes, Bloomfield, for defendant-respondent.

MAUS, Judge.

In this action in replevin the plaintiff sought possession of 21 antique slot machines in the custody of the defendant sheriff of Stoddard County. In his first amended petition, the plaintiff alleged he was entitled to possession of those slot machines on July 17, 1979, "pursuant to two bills of sale from Robert G. White . . . ." He further alleged those machines had a value of $55,000. After a jury waived hearing, the trial court entered judgment against the plaintiff.

By his pleadings, the plaintiff made his right to possession depend upon his acquisition of title by purchase from Robert G. White. The following is a summary of the evidence relating to Robert G. White and his relationship to the slot machines. On August 2, 1978, the police of Dexter had "prior knowledge of an item that another county had stated Mr. Webb had taken." On that evening a police officer saw a van backed up to a building owned by D.I. Webb. The officer observed a lead car and the van drive from the scene. After following for some distance, the officer stopped the van. The driver of the preceding automobile came back to the van to offer his assistance. The driver of the van was Robert G. White. The preceding driver was D.I. Webb. White was identified by Webb as a millionaire from Tennessee. White did not testify. Webb said at the time of the arrest he was preceding the van in order to show White the way to Highway 60.

The slot machines in question were taken from the van. They were delivered to the custody of the defendant sheriff. An information charging Robert G. White with the transportation of gambling devices was filed, but later dismissed. However, the slot machines have remained in the possession of the defendant sheriff. There was no claim made to those machines until after July 17, 1979. On or about that date the plaintiff went to the home of the sheriff and upon the strength of the bill of sale mentioned claimed the machines.

While not decisive of this appeal, it is appropriate to note the statutes of the state pertaining to these slot machines. Section 563.374, RSMo 1969, made possessing or transporting certain designated apparatus, including slot machines, or any other gambling device a misdemeanor. It also declared these items contraband and authorized their seizure and disposition. Section 563.375 provided a procedure for that disposition which included a hearing to be set within 20 days of the seizure. These sections were repealed upon the enactment of The Criminal Code. Chapter 572, effective January 1, 1979, now governs gambling and gambling devices. Section 572.070 makes the possession of a gambling device a class

A misdemeanor. Section 572.120 provides for the forfeiture of gambling devices "as provided by rule of court." Section 572.125 provides for an "affirmative defense" in regard to a slot machine over 30 years old. In the trial of this case, the plaintiff argued the latter section was applicable and entitled him to possession of the 21 slot machines which were over 30 years old.

It is not necessary on this appeal to determine if § 572.125 is applicable to slot machines in the custody of the sheriff at the time it became effective. As noted, the plaintiff's claim was based upon his assertion he bought the slot machines from Robert G. White for $10,000. His testimony relative to that assertion included the following. In August, 1978, he went with Webb and White in White's van to pick up some antique furniture. He saw the slot machines in the van. White asked if he was interested in buying them. He did buy them on July 17, 1979. The transaction took place in an attorney's office. He paid White $10,000 in cash and got a bill of sale and a handwritten receipt signed by White. He identified and offered in evidence this bill of sale and receipt. He also identified and offered a second bill of sale dated March 27, 1981. He said the second bill of sale was prepared because the first one misdescribed the slot machines.

 The trial court did not base its decision upon a declaration of which statute was applicable. Rather, its judgment found the plaintiff "failed to show that he is entitled to possession." It is clear the plaintiff had the burden of proof to establish his claim. *Hayes v. Reorganized School Dist. No. 4,* 590 S.W.2d 115 (Mo.App.1979). It is beyond question that in determining if the plaintiff met this burden, the trial court "is the arbiter of the facts and may disbelieve and reject any portion of the oral testimony, *even though the rejected portion is uncontradicted." Gover v. Empire Bank,* 574 S.W.2d 464, 469 (Mo.App.1978). (Emphasis added). Also see *Hunter v. Wethington,* 205 Mo. 284, 103 S.W. 543 (1907); *McComas v. Umlauf,* 641 S.W.2d 809 (Mo.App.1982); *Grinnell Mut. Reinsurance Co. v. Scott,* 628 S.W.2d 355 (Mo.App.1981); *Barnes v. Bank of Bourbon,* 619 S.W.2d 906 (Mo.App.1981).

The plaintiff's testimony was not unequivocal. He first said, "I took the cash out of my deposit box and paid Mr. White." When asked the name of the bank from which he got the money, initially he declined to answer because it might incriminate him. He later said he had "several thousand dollars in my pocket" and "I took some money out of my deposit box, but I didn't say how much." After he identified the bank he said, "What I mean is, I paid Mr. White during the period of time, 30 days before or 30 days after." He then said he couldn't remember if he or his wife entered the box. The records of the bank show the entry before July 17, 1979, was by his wife on July 7, 1979, and the first subsequent entry was by the plaintiff on September 4, 1979. When asked if the defendant sheriff had ever arrested him and taken him to jail, he replied: "I doubt it. I just can't remember at the time."

The plaintiff also presented the testimony of D.I. Webb. His occupation was a coin machine repairman. For one year, between 1950 and 1957, he worked as a slot machine repairman in Las Vegas. He stated he was with White and the plaintiff when the bill of sale and receipt were given and the $10,000 was paid. He said he was a partner with the plaintiff in some real estate. The plaintiff said they were partners during July, 1979, in various types of businesses. When asked who he represented at the closing, he merely replied he was present. When asked if he had seen slot machines in a club in Arcadia Valley, he declined to answer. Two of the 21 slot machines were in the courtroom. He denied he had seen those machines at a club in Arcadia Valley.

 The finding of the trial court is a clear indication it rejected the testimony concerning the delivery of the bill of sale and contemporaneous payment of $10,000 in cash. As no specific findings of fact were requested, this implied finding may be considered as the foundation for the judgment. *Brooks v. Brockman,* 608 S.W.2d 566 (Mo. App.1980). If a basis for that rejection is

desired, it is readily supplied by the evasiveness of and inconsistencies in the testimony of the plaintiff. *Turner v. Kaplan,* 602 S.W.2d 460 (Mo.App.1980); *D.S. v. H.T.H.,* 600 S.W.2d 698 (Mo.App.1980). The same may be said of the testimony of Webb. Of particular note is Webb's memory of the simultaneous payment of the cash when the plaintiff finally concluded, "What I mean is, I paid Mr. White during the period of time, 30 days before or 30 days after."

The judgment is affirmed.

CROW, P.J., GREENE, C.J., and FLANIGAN and PREWITT, JJ., concur.